[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10676

_____

D.C. Docket Nos. 3:08-cv-00914-VMC-MCR,
3:06-cr-00349-VMC-MCR-1

KEVIN SPENCER,

Petitioner–Appellant,

versus

UNITED STATES OF AMERICA,

Respondent–Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 14, 2014)

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN and ROSENBAUM, Circuit Judges.[*]

_____

[*] Senior United States Circuit Judge Phyllis A. Kravitch elected not to participate in the en banc proceedings in this matter. *See* 28 U.S.C. § 46(c). Judge Julie E. Carnes joined the Court on July 31, 2014, and did not participate in these en banc proceedings. Judge Jill Pryor joined the Court on October 6, 2014, and did not participate in these en banc proceedings.

WILLIAM PRYOR, Circuit Judge:

This appeal concerns whether a federal prisoner may relitigate an alleged misapplication of the advisory United States Sentencing Guidelines in a collateral attack on a final sentence. After he pleaded guilty to distributing cocaine and we affirmed the judgment against him, Kevin Spencer moved to vacate his sentence of imprisonment, 28 U.S.C. § 2255, for an alleged error in the application of the advisory guidelines. Spencer argues that an intervening decision of the Supreme Court, *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008), makes clear that the district court and this Court erroneously classified him as a "career offender" based on a prior conviction for felony child abuse, which he argues is not a "crime of violence." United States Sentencing Guidelines Manual § 4B1.1 (Nov. 2006). Spencer maintains that this alleged error represents a "fundamental defect which inherently results in a complete miscarriage of justice," *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962), that can be revisited on collateral review. We disagree.

Spencer cannot collaterally attack his sentence based on a misapplication of the advisory guidelines. Spencer's sentence falls below the statutory maximum, and his prior conviction for felony child abuse has not been vacated. Spencer's sentence was and remains lawful. We affirm the denial of Spencer's motion to vacate his sentence.

2

## I. BACKGROUND

A federal grand jury indicted Kevin Spencer for distributing cocaine base in 2006. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C). Spencer pleaded guilty to that federal charge in 2007. Spencer's plea came after repeated encounters with the criminal justice system.

Spencer had previously pleaded guilty to eight crimes committed between 2003 and 2006, and the State of Florida charged Spencer with other crimes during that period too. In November of 2003, Spencer was arrested for selling cocaine within 1000 feet of a school. Two months later, officers arrested Spencer after discovering cocaine, marijuana, and drug paraphernalia in his vehicle. Spencer pleaded guilty to both cocaine-related offenses on the same day. The trial court sentenced him to concurrent one-year sentences for those crimes, but the state did not prosecute the charges for possession of marijuana and drug paraphernalia. One month after his arrest for possession of drugs, officers arrested Spencer for driving without a license. He pleaded guilty, and the court sentenced him to 16 days in jail. Less than six months later, Spencer engaged in sexual intercourse with a 14-year-old girl. He pleaded guilty to felony child abuse and received a one-year sentence for that crime. Then in March of 2005, officers arrested Spencer for driving without a valid license and possession of marijuana and drug paraphernalia. The state did not prosecute the drug charges, and Spencer pleaded guilty to driving

3

without a valid license. One month later, officers arrested Spencer for possession of cocaine and resisting an officer. Spencer pleaded guilty, and the court sentenced him to four months in jail for possession of cocaine. The state did not prosecute the other charge. Eight months later, officers arrested Spencer for drug possession and trespassing on posted property. The state dropped the charges for drug possession, but Spencer pleaded guilty to the trespassing charge. And in 2006, Spencer pleaded guilty to curb drinking.

Based on Spencer's prior convictions for selling cocaine and felony child abuse, the district court concluded that Spencer was a career offender under the guidelines, U.S.S.G. § 4B1.1, and sentenced him to 151 months of imprisonment. The guidelines define a career offender as having at least two prior felony convictions for crimes of violence or controlled substance offenses. *Id.* A "crime of violence" is any crime punishable by a term of more than one year of imprisonment that either "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a)–(b).

Spencer argued that his prior conviction for felony child abuse is not a "crime of violence." When he was 18 years old, Spencer engaged in sexual intercourse with a 14-year-old female victim. The state charged him with lewd or

4

lascivious battery, *see* Fla. Stat. § 800.04(4) (2004), but he pleaded guilty to a lesser offense of third-degree felony child abuse. He admitted during the plea colloquy that he had "engage[d] in sexual activity with a minor," which "could reasonably cause physical or mental injury to that child." Under Florida law, when an offender "knowingly or willfully abuses a child without causing great bodily harm, permanent disability, or permanent disfigurement to the child," the offender commits third-degree felony child abuse. *Id*. § 827.03(2)(c). "Child abuse" under Florida law includes "[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child." *Id.* § 827.03(1)(b)(2).

In Spencer's direct appeal, we rejected his argument that the district court erroneously sentenced him as a career offender, and we affirmed his sentence. *Spencer v. United States*, 271 F. App'x 977, 978–79 (11th Cir. 2008). We relied on prior panel precedent that sexual offenses against minors are crimes of violence, *see, e.g.*, *United States v. Ivory*, 475 F.3d 1232, 1238 (11th Cir. 2007), *abrogated by United States v. Owens*, 672 F.3d 966 (11th Cir. 2012), and we ruled that Spencer's conviction for felony child abuse was a crime of violence because it "involved a serious potential risk of physical injury to another." *Spencer*, 271 F. App'x at 979.

Two weeks later, the Supreme Court decided *Begay*, which prompted Spencer to move to vacate his sentence, 28 U.S.C. § 2255. The Supreme Court

5

held that driving under the influence of alcohol was not a "violent felony" under the Armed Career Criminal Act because it did not involve purposeful, violent, or aggressive conduct and was not similar to burglary, arson, extortion, or crimes involving explosives. *Begay*, 553 U.S. at 145, 148, 128 S. Ct. at 1588; *see also Sykes v. United States*, ___ U.S. ___, 131 S. Ct. 2267, 2275 (2011) (declining to extend *Begay* to vehicle flight). Because the career-offender provision of the guidelines uses language nearly identical to the definition of "violent felony" in the Armed Career Criminal Act, *see James v. United States*, 550 U.S. 192, 206, 127 S. Ct. 1586, 1596 (2007), *Begay* also limited the meaning of a "crime of violence" for purposes of the career-offender enhancement. Spencer argued that *Begay* applies retroactively to his sentence and makes clear that felony child abuse is not a crime of violence. Spencer moved that he be resentenced without the career-offender enhancement.

The district court denied Spencer's motion to vacate his sentence, but we then granted a certificate of appealability on the following two issues:

> Whether in light of *Begay* . . . , *Gilbert v. United States*, No. 09-12513 (11th Cir. June 21, 2010), and *United States v. Hunter*, 559 F.3d 1188 (11th Cir. 2009), the movant's freestanding challenge to a career offender sentence imposed under U.S.S.G. § 4B1.1 is cognizable under 28 U.S.C. § 2255? If so, whether the district court, in light of *Begay* . . . erroneously determined that the movant was properly classified as a career offender where he had a prior state conviction for felony child abuse under Fla. Stat. § 827.03(1)?

6

After a panel of this Court answered both questions in the affirmative, *Spencer v. United States*, 727 F.3d 1076 (11th Cir. 2013), *vacated pending reh'g en banc*, No. 10-10676 (11th Cir. Mar. 7, 2014), we voted to vacate the panel opinion and rehear this appeal en banc.

## II. STANDARD OF REVIEW

When we review the denial of a motion to vacate a sentence, 28 U.S.C. § 2255, "we review legal conclusions *de novo* and findings of fact for clear error." *Mamone v. United States*, 559 F.3d 1209, 1210 (11th Cir. 2009).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain why we exercise our discretion to decide this appeal despite a defective certificate of appealability. Second, we conclude that the district court lacked the authority to review Spencer's claim that he was erroneously sentenced under the advisory guidelines.

### A. *The Certificate of Appealability Is Defective, But We Exercise Our Discretion to Consider the Merits of this En Banc Appeal at this Late Stage.*

Prisoners who move to vacate their sentences may contest only a narrow subset of issues to our Court. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must specify what issue or issues raised by the prisoner satisfy that requirement. *Id.* § 2253(c)(3). The Supreme Court has held that the issuance a certificate of appealability devoid of an underlying

7

constitutional issue does not constitute a jurisdictional defect. *See Gonzalez v. Thaler*, ___ U.S. ___, ___, 132 S. Ct. 641, 649–52 (2012). But even so, we cannot ignore the clear command of Congress articulated in subsections 2253(c)(2) and (3).

Neither issue in the certificate for this appeal even purports to involve an underlying error of constitutional magnitude, but we decline to vacate the certificate at this late hour. The parties have litigated this matter before the district court, before a panel of this Court, and before our en banc Court. *See Rayner v. Mills*, 685 F.3d 631, 635 n.1 (6th Cir. 2012) ("[A]s the issues have already been briefed and presented to this Court, we will not review the grant of the COA."); *Phelps v. Alameda*, 366 F.3d 722, 728 (9th Cir. 2004) ("In many cases, . . . the effective deployment of substantial legal resources favors turning directly to the merits."). They have briefed and orally argued this appeal twice, and we have heard an *amicus curiae*, the National Association of Criminal Defense Lawyers, in the second round. And notably both parties have urged us not to vacate the defective certificate that we erroneously issued.

We will not be so lenient in future appeals when a certificate fails to conform to the gatekeeping requirements imposed by Congress. Going forward, a certificate of appealability, whether issued by this Court or a district court, must specify what constitutional issue jurists of reason would find debatable. Even when

8

a prisoner seeks to appeal a procedural error, the certificate must specify the underlying constitutional issue. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000) ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."). A failure to specify that issue would violate the text enacted by Congress, *see* 28 U.S.C. § 2253(c)(3), and will result in the vacatur of the certificate.

## B. The District Court Lacked the Authority To Consider Whether Spencer Was Erroneously Sentenced under the Guidelines.

Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. When a prisoner, like Spencer, alleges that his "sentence was imposed in violation of the . . . laws of the United States . . . or is otherwise subject to collateral attack," 28 U.S.C. § 2255(a), a district court lacks the authority to review the alleged error "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice,'" *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 2240 (1979) (quoting *Hill*, 368 U.S. at 428, 82 S. Ct. at 471). The Supreme Court first applied this standard

9

when it ruled that a prisoner could not collaterally attack his sentence for a violation of Federal Rule of Criminal Procedure 32(a). *Hill*, 368 U.S. at 425–26, 82 S. Ct. at 470. The prisoner argued that the trial court failed to offer him an opportunity to make a personal statement at sentencing, but the Supreme Court held that the error was not "of the character or magnitude cognizable under a writ of habeas corpus" because it was not "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 428, 82 S. Ct. at 471.

The Supreme Court further distilled this standard in *United States v. Addonizio*, in which it ruled that a "lawful" sentence did not result in a "complete miscarriage of justice." 442 U.S. at 186–87, 99 S. Ct. at 2241. Addonizio argued that he had been incarcerated longer than the sentencing court had intended. At sentencing, the court expressed that it expected Addonizio to serve only one-third of his sentence. *Id.* at 181, 183, 99 S. Ct. at 2238, 2239. But after the trial court sentenced Addonizio, the Parole Commission instituted a new policy that required him to serve a greater fraction of his sentence before he was eligible for parole. *Id.* at 182, 99 S. Ct. at 2238–39. The Supreme Court held that Addonizio failed to establish a fundamental defect where his sentence was less than the statutory maximum sentence prescribed by Congress. *Id.* at 186–87, 99 S. Ct. at 2241. Likewise, the alleged error in this appeal—erroneously designating a defendant as

a career offender—is not a fundamental defect that inherently results in a complete miscarriage of justice.

A prisoner may challenge a sentencing error as a "fundamental defect" on collateral review when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated, but Spencer's motion alleges nothing of the kind. In *Davis v. United States*, for example, the Supreme Court collaterally reviewed a prisoner's conviction for conduct that was no longer illegal. 417 U.S. 333, 346–47, 94 S. Ct. 2298, 2305 (1974). Because the prisoner was incarcerated "for an act that the law does not make criminal," "[t]here [could] be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." *Id.* at 346, 94 S. Ct. at 2305 (internal quotation marks omitted). A prisoner might also collaterally attack a sentence enhanced by a prior conviction if that prior conviction has since been vacated. In *Johnson v. United States*, the Supreme Court explained that "a defendant given a sentence enhanced for a prior conviction is *entitled* to a reduction if the earlier conviction is vacated." 544 U.S. 295, 303, 125 S. Ct. 1571, 1577 (2005) (emphasis added); *see also Stewart v. United States*, 646 F.3d 856, 859, 864–65 (11th Cir. 2011) ("The vacatur order gives a defendant . . . the basis to challenge an enhanced federal sentence . . . ."). But the Supreme Court has rejected collateral attacks of other sentencing errors, including the failure of the sentencing

11

court to mention the right to appeal or to explain parole terms, where the prisoner could establish no prejudice. *See Peguero v. United States*, 526 U.S. 23, 24, 119 S. Ct. 961, 963 (1999); *United States v. Timmreck*, 441 U.S. 780, 784, 99 S. Ct. 2085, 2087 (1979).

This limited realm of fundamental defects that result in a complete miscarriage of justice comports with our understanding of the similarly phrased exception to the rule of procedural default for state prisoners. If a state prisoner procedurally defaults his claim, he can overcome that procedural default if he establishes that a "fundamental miscarriage of justice" would result if he were not able to raise the claim on collateral review. *Murray v. Carrier*, 477 U.S. 478, 496–97, 106 S. Ct. 2639, 2650 (1986); *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506 (1977). For a state prisoner to establish a fundamental miscarriage of justice, he must prove that he is innocent. *See Schlup v. Delo*, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 1470 (1991); *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012). The similarly worded federal standard should not be more lenient than the exception for procedural default for state prisoners. *See, e.g.*, *United States v. Cuch*, 79 F.3d 987, 994 (10th Cir. 1996) (concluding that alleged defects did not result in a "complete miscarriage of justice" because there was "no indication that an innocent person may have been convicted for crimes he did not

12

commit" (internal quotation marks omitted)). When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice.

Judge Jordan's dissenting opinion suggests that the Supreme Court granted collateral relief in *United States v. Behrens*, 375 U.S. 162, 84 S. Ct. 295 (1963), to correct a garden-variety sentencing error, but the error in *Behrens* was far more profound than a misapplication of advisory sentencing guidelines. In *Behrens*, the district court violated Federal Rule of Criminal Procedure 43, which requires that the defendant be present "at every stage of the trial including . . . the imposition of sentence." *Id*. at 165, 84 S. Ct. at 297. The district court imposed a sentence without the defendant or even his counsel present. *Id*. That error in turn deprived the defendant of the right to allocute and present information in mitigation of punishment in violation of Rule 32(a). *Id*. We have described the guarantee of the right to be present at sentencing as being "constitutionally based." *United States v. Jackson*, 923 F.2d 1494, 1496 (11th Cir. 1991); *see also United States v. Huff*, 512 F.2d 66, 71 (1975). And *Behrens* described the right to allocute as "ancient in the law" and "of most importance." 375 U.S. at 165, 84 S. Ct. at 297. Imposing a sentence without a defendant's counsel present also implicates a defendant's Sixth

Amendment right to effective assistance of counsel. *See Mempa v. Rhay*, 389 U.S. 128, 134, 88 S. Ct. 254, 256–57 (1967). A misapplication of advisory sentencing guidelines, in contrast, does not violate an "ancient" right, nor does it raise constitutional concerns.

Our dissenting colleagues would grant Spencer's collateral attack to correct an alleged misapplication of the advisory sentencing guidelines, but they fail to explain what sort of misapplication of the advisory guidelines they would *not* correct, much less provide a principled test for distinguishing between misapplications of the guidelines that can be collaterally challenged and those that cannot. Perhaps our colleagues view all misapplications of the advisory guidelines as "fundamental defects which inherently result in a complete miscarriage of justice." But if not, we are left to guess about which types of guideline error could be corrected on collateral review from their perspective.

We lack the authority to provide Spencer relief. Even if he is not a career offender, his sentence is lawful. *See Addonizio*, 442 U.S. at 186–87, 99 S. Ct. at 2241. Spencer does not allege that he is actually innocent of the crime for which he was indicted, nor that any of his prior convictions have been vacated. Instead, he contends only that the district court erroneously classified him as a career offender under the advisory guidelines. But any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory. If

14

the district court were to resentence Spencer, the district court could impose the same sentence again. *See Gilbert v. United States*, 640 F.3d 1293, 1304 (11th Cir. 2011) (en banc) ("There is, however, no guarantee that his new sentence under the post-*Booker* advisory guidelines system will be shorter than 292 months. It could be the same or even longer."); *Hawkins v. United States*, 706 F.3d 820, 825 (7th Cir. 2013); *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc). In a resentencing, the district court would again review Spencer's prior conviction for felony child abuse, whether or not it is a "crime of violence," and could decide that his slew of prior convictions warrants a greater sentence than the guidelines prescribe. *See Hawkins*, 706 F.3d at 825.

Both the Seventh and Eighth Circuits have held that federal courts lack the power to provide a prisoner relief on the ground that he was misclassified as a career offender, because that error does not render his sentence unlawful. *See Hawkins*, 706 F.3d at 823; *Sun Bear*, 644 F.3d at 704–06; *see also United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001) ("[C]ourts have generally declined to collaterally review sentences that fall within the statutory maximum."); *United States v. Segler*, 37 F.3d 1131, 1133–34 (5th Cir. 1994); *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993) ("A claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum."). *But cf. Narvaez v. United States*, 674 F.3d

15

621, 628 (7th Cir. 2011) (concluding that a prisoner sentenced under "*mandatory*" guidelines could establish a "complete miscarriage of justice" if the prisoner was erroneously sentenced as a career offender). In *Sun Bear v. United States*, the prisoner argued that he was entitled to resentencing because *Begay* called into question whether his prior felonies were "crime[s] of violence." 644 F.3d at 703–04. The Eighth Circuit held that he was not entitled to resentencing based on a misapplication of the guidelines. *Id*. Spencer would have us distinguish *Sun Bear* because, even though the prisoner was sentenced as a career offender, his sentence was within the applicable guideline range absent the career-offender enhancement. But the en banc Eighth Circuit made clear that, "in sentencing, a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law." *Id.* at 706. In *Sun Bear*, the prisoner's sentence, which was below the statutory maximum, was not "unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority." *Id.* at 705. And in *Hawkins v. United States*, the Seventh Circuit refused to entertain a prisoner's argument on collateral review that he was erroneously sentenced as a career offender. The Seventh Circuit reasoned that, even if a district judge imposes a sentence in excess of the correct advisory guideline range, the error is not "corrigible in a postconviction proceeding" because "the sentence is below the statutory maximum." 706 F.3d at 823.

16

Spencer relies heavily on the now-vacated opinion of the Fourth Circuit in *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014), *vacated pending reh'g en banc*, No. 13-7152, 2014 WL 3377981 (4th Cir. July 10, 2014). That divided panel, over the persuasive dissent of Judge Wilkinson, held that erroneously classifying a prisoner as a career offender was a "fundamental defect" that a federal court could remedy on collateral review. *Id.* at 555. But as Judge Wilkinson's dissent explained, no fundamental defect occurs when a court erroneously sentences a prisoner as a career offender under *advisory* guidelines. *Id.* at 560 (Wilkinson, J., dissenting). Even if a court vacated the sentence on collateral review, the district court would be free to impose the same sentence on remand. *Id.*

Spencer asks us to distinguish a career-offender error from other guideline errors because the career-offender enhancement is the result of a congressional mandate. *See* 28 U.S.C. § 994(h). Congress directed the United States Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for defendants convicted of crimes of violence or certain drug crimes and who have two or more prior felonies that qualify as crimes of violence or certain drug crimes. *Id.* The career-offender enhancement, U.S.S.G. § 4B1.1, satisfies that congressional directive.

Spencer's argument fails to appreciate the advisory nature of every provision of the guidelines. Although Congress directed the Sentencing Commission to

17

create a guideline for career offenders, a district judge cannot treat that guideline as mandatory. *See Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). Moreover, all of the guidelines are the result of a congressional directive—the Sentencing Reform Act of 1984—but none is tantamount to the laws of Congress. *See Mistretta v. United States*, 488 U.S. 361, 395, 109 S. Ct. 647, 667 (1989) ("Prior to the passage of the Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission. . . . It was the everyday business of judges, taken collectively, to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them. The Sentencing Commission does no more than this . . . .").

Spencer also contends that career-offender errors are more serious than other guideline errors, but "[e]very Guidelines calculation may affect the sentencing range to a greater or lesser degree." *Whiteside*, 748 F.3d at 561 (Wilkinson, J., dissenting). The greater impact of one enhancement versus the lesser impact of another enhancement is immaterial because, in either scenario, the sentence will be within the statutory limits imposed by Congress. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the

applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

We are also unpersuaded by the argument of both Spencer and the *amicus curiae* that Spencer's advisory guideline sentence is unlawful because it could be vacated on direct review for substantive unreasonableness. In this post-*Booker* world, we refuse to speculate whether a sentence exceeding an advisory guideline range would be vacated on direct review. To be sure, the guidelines are a "lodestone of sentencing," *Peugh v. United States*, ___ U.S. ___, ___, 133 S. Ct. 2072, 2084 (2013), but treating the guidelines as mandatory is reversible error, *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). And even though district courts "must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process," *id.* at 50 n.6, 128 S. Ct. at 596 n.6, only half (51.2 percent) of the defendants sentenced in 2013 received a sentence within the guideline range, United States Sentencing Commission, *2013 Annual Report and 2013 Sourcebook of Federal Sentencing Statistics*, at A-39 (2013). Approximately one-quarter (27.9 percent) of sentences were imposed below the guideline range at the request of the government. *Id.* And district courts imposed the remaining sentences (20.8 percent) above or below the guideline range. *Id.* at 40.

19

Spencer argues that errors involving the career-offender enhancement are somehow different, but sentencing courts depart or vary from the guideline range *more often* when they sentence career offenders. Only 30 percent of career offenders were sentenced within the guideline range in 2013. When Spencer was sentenced, the district court concluded—over Spencer's objection that his prior conviction was not a crime of violence—that Spencer deserved a harsh sentence within the guideline range. Perhaps the district court would impose a less severe sentence on resentencing; perhaps it would not, especially given Spencer's prior conviction for felony child abuse and his repeated run-ins with the law. But we need not speculate because, as our sister circuits have concluded in routine, unpublished decisions, the reimposition of the same sentence ordinarily will not be substantively unreasonable given the defendant's criminal history, whether or not he qualifies as a career offender. *See, e.g.*, *United States v. Lewis*, 496 F. App'x 425 (5th Cir. 2012) (affirming as substantively reasonable the same 360-month sentence without the career-offender enhancement); *United States v. Logan*, 456 F. App'x 224 (4th Cir. 2011) (affirming as substantively reasonable the same 36-month sentence without the career-offender enhancement); *see also United States v. Miles*, 395 F. App'x 149 (5th Cir. 2010) (affirming as substantively reasonable a 210-month sentence, which was two times greater than the guideline range without the career-offender enhancement).

Even if a variance from the guideline range is "substantively unreasonable," that standard is not synonymous with the standard we employ on collateral review. A substantively unreasonable sentence does not result in a "complete miscarriage of justice" if that sentence is less than the statutory maximum sentence Congress has enacted. Spencer's attempt to equate the alleged guideline error in his sentencing with an error in the application of the Armed Career Criminal Act, 18 U.S.C. § 924(e), illustrates our point. Even if we were to assume that the district court incorrectly classified Spencer as a career offender—nearly doubling his guideline range—his sentence of 151 months of imprisonment falls well below the statutory maximum of 20 years. 21 U.S.C. § 841(b)(1)(C). In contrast with that alleged guideline error, an error in the application of the Armed Career Criminal Act catapults a defendant beyond the 10-year statutory maximum sentence for his crime. *Compare id.* § 924(a)(2) (providing for punishment of not more than 10 years of incarceration), *with id.* § 924(e) (requiring punishment of not less than 15 years of incarceration if the defendant has three prior violent felony or serious drug convictions). We can collaterally review a misapplication of the Armed Career Criminal Act because, unlike an advisory guideline error, that misapplication results in a sentence that exceeds the statutory maximum.

Spencer also likens his alleged sentencing error to *Johnson* and *Stewart*, in which the movants' prior convictions, used to enhance their sentences, had been

vacated. And Judge Jordan's dissenting opinion argues that there is no meaningful distinction between the vacated convictions in *Johnson* and *Stewart* and Spencer's conviction for felony child abuse. We disagree.

Spencer's prior conviction has not been vacated, and that distinction matters. When a conviction is *vacated*, that vacatur constitutes a "new 'fact'" with which the petitioner can challenge his sentence. *Stewart*, 646 F.3d at 858. But here, Spencer argues no new factual basis for reversing his sentence. He presents instead an argument of legal innocence. Even if we were to agree with Spencer that he is "innocent" as a career offender, that *legal* innocence falls far short of *factual* innocence, the kind of innocence involved in *Johnson* and *Stewart*. *See McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) ("[A]ctual innocence means *factual* innocence, not mere legal insufficiency." (internal quotation marks omitted)). If we were to conclude that felony child abuse was not a "crime of violence," that legal conclusion would not negate the fact that Spencer committed a serious crime. The sentencing judge would consider his prior conviction for felony child abuse anew during resentencing. *Johnson* and *Stewart* cannot stand for the proposition that a prisoner sentenced under advisory guidelines whose prior convictions remain valid can establish that an error in sentencing is a complete miscarriage of justice.

22

Spencer urges us to forget about finality, at least for the first round of collateral review. He argues that our en banc decision in *Gilbert*, 640 F.3d at 1307–08, distinguished between claims raised in a first motion to vacate and those raised in second or successive motions. We are unpersuaded by this distinction.

Finality is a concern not only for a second or successive motion to vacate, but also for a first motion to vacate a sentence. Finality "is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309, 109 S. Ct. 1060, 1074 (1989). And "[a] procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands." *McCleskey*, 499 U.S. at 492, 111 S. Ct. at 1469 (internal quotation marks omitted); *see also* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 145 (1970) ("The proverbial man from Mars would surely think we must consider our system of criminal justice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction."). Spencer must establish that his sentencing error resulted in a complete miscarriage of justice before we set aside our interest in finality. He cannot do so.

23

Finally, Spencer, the *amicus curiae*, and our dissenting colleagues place far too much weight on the relevance of *Peugh*, which involved a direct appeal of a sentence. 133 S. Ct. 2072. *Peugh* says nothing about the authority to consider an advisory guideline error on collateral review. *See Hawkins v. United States*, 724 F.3d 915, 916–19 (7th Cir. 2013) (denying rehearing en banc because the intervening decision in *Peugh* did not affect collateral review of sentencing errors). In *Peugh*, the Supreme Court held, "A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." 133 S. Ct. at 2084. The Court reasoned that a retrospective increase in the applicable advisory guideline range created a "sufficient risk of a higher sentence" because advisory sentences are still "anchored by the Guidelines." *Id.* at 2083–84. But the standard employed in *Peugh*, *id.* at 2085 (requiring a "significant risk of a higher sentence"), is far less demanding than the standard Spencer must satisfy: that an error in the application of advisory guidelines "inherently results in a complete miscarriage of justice," *Hill*, 368 U.S. at 428, 82 S. Ct. at 471; *see also Hawkins*, 724 F.3d at 917. Because Spencer cannot establish that his alleged sentencing error resulted in a "complete miscarriage of justice," we do not have the authority to consider Spencer's claim on collateral review. *Peugh* is inapposite.

Spencer's sentence was and is lawful. It does not exceed the statutory maximum sentence. *See* 21 U.S.C. § 841(b)(1)(C). A resentencing court could reimpose the same sentence, and the court would again consider Spencer's valid prior conviction for felony child abuse in determining his sentence. Because there has been no "complete miscarriage of justice," there can be no collateral review of Spencer's sentence.

## IV. CONCLUSION

We **AFFIRM** the denial of the motion to vacate Spencer's sentence.

WILSON, Circuit Judge, joined by MARTIN, JORDAN, and ROSENBAUM, Circuit Judges, dissenting:

Kevin Spencer has served approximately eight years of the prison sentence he received after pleading guilty to selling two rocks of crack cocaine to an undercover police officer. Had the district court correctly applied the sentencing guidelines, Spencer would likely be a free man today. Instead, because of the district court's erroneous application of the career offender enhancement, Spencer faces the prospect of spending nearly six more years in prison unnecessarily.

Contrary to the Majority, I do not read Supreme Court precedent to say that a "lawful" sentence forecloses a determination by us that a complete miscarriage of justice has taken place in Spencer's case. Accordingly, I would reach the merits of Spencer's claim because I believe that an erroneous guideline determination that is likely to result in a person spending such a considerable amount of additional time in prison—here, six years—constitutes a fundamental error resulting in a complete miscarriage of justice.

## I.

An allegation of legal error that is neither constitutional nor jurisdictional is not cognizable on collateral review "unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 2240 (1979)

26

(internal quotation marks omitted).   The question before us, then, is whether the error alleged by Spencer—the erroneous application of the career offender enhancement—meets that standard.

The Majority answers this question in the negative because the sentence Spencer received was "lawful".  This answer follows from two rules the Majority distills from Supreme Court precedent.  The first: errors that yield unlawful sentences are cognizable on collateral review.  *See* Maj. Op. at 10–11 (recognizing that a claim that a sentence was based on conduct "the law does not make criminal" is cognizable on collateral review (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974))).  The second: errors that yield lawful sentences are *not* cognizable on collateral review.  *See* Maj. Op. at 10 ("'[L]awful' sentences do not result in a 'complete miscarriage of justice.'" (quoting *Addonizio*, 442 U.S. at 186–87, 99 S. Ct. at 2241)).  The Majority, then, has identified a dichotomy.  When a claim of non-constitutional, non-jurisdictional error is raised on collateral review, we may consider that claim only if the alleged error resulted in an unlawful sentence.  If the alleged error resulted in a lawful sentence, then there is no basis for the collateral attack.  I reject this dichotomy.  For the reasons explained below, I believe that the fact that a sentence is deemed "lawful" does not prohibit us from determining that a complete miscarriage of justice has occurred on collateral review.

A.

If the line dividing cognizable claims from non-cognizable claims is the line between lawful and unlawful sentences, then the definitions of lawful and unlawful become exceedingly important.  The Majority does not explicitly define either, but does indicate that a sentence is lawful if it is within the scope of a court's authority.  See Maj. Op. at 10 (noting that the sentence in *Addonizio* was lawful because it "was less than the statutory maximum sentence prescribed by Congress"); *id.* at 22–23 ("Spencer's sentence . . . is lawful [because i]t does not exceed the statutory maximum sentence [and] [a] resentencing court could reimpose the same sentence . . . ." (citation omitted)).  And if lawful sentences are those within the scope of a court's authority, then logic would dictate that unlawful sentences must be those outside the scope of that authority.  This conclusion is supported by the Majority's reliance on *Davis* as an example of error that results in a complete miscarriage of justice, *see Addonizio*, 442 U.S. at 186–87, 99 S. Ct. at 2241 (stating that "the conviction and sentence [in *Davis*] were no longer lawful" because the charged conduct was not criminal), and the Majority's approval of an Eighth Circuit case defining "'an unlawful or illegal sentence [as] one imposed without, or in excess of, statutory authority,'" Maj. Op. at 15 (quoting *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc)).

28

The Majority's dichotomy serves to distinguish cases that are cognizable on collateral review—i.e., cases where error led to an unlawful sentence—from cases that are not cognizable on collateral review—i.e., cases where error led to a lawful sentence.  However, the Majority interprets Supreme Court and Eleventh Circuit case law as providing an avenue for collateral attack even when a sentence is lawful.  If lawful sentences can result in a complete miscarriage of justice, then the Majority's dichotomy and its basis for denying Spencer relief are simply wrong.

Today's opinion recognizes the continuing validity of the Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295, 125 S. Ct. 1571 (2005), and reaffirms our own decision in *Stewart v. United States*, 646 F.3d 856 (11th Cir. 2011), *see* Maj. Op. at 11, both of which recognize that a petitioner is entitled to collaterally attack a sentence when he can show that a prior conviction used to trigger a sentencing enhancement has been vacated, *see Johnson*, 544 U.S. at 303, 125 S. Ct. at 1577 ("[A] defendant given a sentence enhanced for a prior conviction is *entitled* to a reduction if the earlier conviction is vacated." (emphasis added)); *Stewart*, 646 F.3d at 859 (noting that *Johnson* established that the vacatur of a state conviction used to enhance a federal sentence "gives a defendant . . . the basis to challenge [that] sentence").  For the reasons set out in Judge Rosenbaum's dissent, which I join, I believe that *Johnson*'s holding requires us to recognize the cognizability of Spencer's claim.  Under *Johnson*, a lawful sentence reached after

29

an erroneous guideline range calculation can be the foundation for a cognizable §
2255 claim, and, as Judge Rosenbaum accurately details, Spencer's claim is one of
those that actually is cognizable.

### B.

The Majority says that its survey of Supreme Court precedent concerning the
miscarriage of justice standard requires it to say that "[w]e lack the authority to
provide Spencer relief because . . . his sentence is lawful." Maj. Op. at 13. The
Supreme Court has announced no such rule. To be sure, the Supreme Court has
clearly held that an error resulting in an unlawful sentence—i.e., a sentence that is
beyond the scope of a court's legal authority—is *sufficient* to satisfy the complete
miscarriage of justice standard. *See Davis*, 417 U.S. at 346–47, 94 S. Ct. at 2305;
*Addonizio*, 442 U.S. at 186–87, 99 S. Ct. at 2241 (stating that refusing to vacate the
sentence in *Davis* "would surely have been a complete miscarriage of justice, since
the conviction and sentence were *no longer lawful*" (emphasis added) (internal
quotation marks omitted)). But nowhere has the Supreme Court held that a finding
of unlawfulness is *necessary* to satisfy the complete miscarriage of justice
standard. In fact, *Addonizio* itself indicates that the fact that a sentence is lawful
does not necessarily preclude a court from determining that a complete miscarriage
of justice has occurred. *See* 442 U.S. at 187–88, 99 S. Ct. at 2241–42 (determining
that prior case law did not support allowing a petitioner to collaterally attack his

30

sentence and then considering whether there was a "basis for enlarging the grounds for collateral attack").

In *Addonizio*, the petitioners argued that "a postsentencing change in the policies of the United States Parole Commission . . . prolonged their actual imprisonment beyond the period intended by the sentencing judge." *Id.* at 179, 99 S. Ct. at 2237. The Court's analysis of whether the claimed error was sufficient to allow a collateral attack began with a comparison to cases "in which collateral attacks were permitted." *Id.* at 186, 99 S. Ct. at 2241. The Court noted that Addonizio's claim, like the claim in *Davis*, was that "a judgment that was lawful when it was entered should be set aside because of a later development." *Id.* However, the Court distinguished *Davis* because the subsequent development there "was a change in the substantive law that established that" petitioner's sentence was unlawful. *Id.* at 186–87, 99 S. Ct. at 2241. Because the errors alleged in *Addonizio* did not render the sentences unlawful, the Court found that *Davis* did not entitle the petitioners to relief. *See id.* That finding, however, merely signaled to the Court that the rule announced in *Davis* did not provide Addonizio with a basis for relief. *See id.* at 187, 99 S. Ct. at 2241 ("Our prior decisions, then, provide no support for Addonizio's claim that he is entitled to relief under § 2255.").

31

The Majority interprets the Court's reasoning in *Addonizio* as establishing a per se rule: lawful sentences do not result in a complete miscarriage of justice. However, that rule is belied by the fact that, after determining that the sentences were lawful, the Court nevertheless went on to consider whether it would be appropriate to allow a collateral attack to proceed. *See id.* (deciding that "there is no basis for enlarging the grounds for collateral attack to include claims" like Addonizio's). The Majority, then, has taken the rule announced in *Davis* and reaffirmed in *Addonizio*—unlawful sentences result in a complete miscarriage of justice—and inferred that the negative must also be true to arrive at the rule it announces today—lawful sentences do not result in a complete miscarriage of justice. In doing so, the Majority claims to be bound by a rule the Supreme Court has not recognized. I believe that we are entitled to consider whether the erroneous enhancement of an advisory guideline range is a fundamental error that results in a complete miscarriage of justice.

## II.

Not "every asserted error of law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346, 94 S. Ct. at 2305. When a petitioner alleges legal error that is neither constitutional nor jurisdictional in nature, that error is not cognizable on collateral review "unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Addonizio*, 442 U.S. at

32

185, 99 S. Ct. at 2240 (internal quotation marks omitted).  As I have stated, no precedent precludes our consideration of Spencer's petition.  To determine whether we can reach the merits of Spencer's claim, we are entitled to look to prior precedent concerning the complete miscarriage of justice standard and decide for ourselves whether there is a "basis for enlarging the grounds for collateral attack to include claims" like Spencer's.  *See id.* at 187, 99 S. Ct. at 2241.  In doing so, we must keep in mind that this standard is satisfied only in "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979) (internal quotation marks omitted).

The Supreme Court tells us that those exceptional circumstances are not met unless a petitioner has suffered prejudice.  *Davis*, 417 U.S. at 346, 94 S. Ct. at 2305 ("In *Hill v. United States*, 368 U.S. 424, 429 (1962), for example, we held that 'collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure *in the absence of any indication that the defendant was prejudiced* by the asserted technical error." (emphasis added)); *Peguero v. United States*, 526 U.S. 23, 24, 119 S. Ct. 961, 963 (1999) (holding that "a district court's failure to advise the defendant of his right to appeal [did] not entitle him to habeas relief if he knew of his right and hence *suffered no prejudice* from the omission" (emphasis added)); *Timmreck*, 441 U.S.

33

at 784, 99 S. Ct. at 2087 (noting that the violation of Rule 11 did not result in a complete miscarriage of justice where the defendant was aware of his rights and would not have acted differently even if the rule had been followed). Prejudice, then, is a necessary part of a determination that there has been a complete miscarriage of justice. But given the exceptional nature of this standard, not all prejudice will be sufficient. In both cases where the Supreme Court determined that a complete miscarriage of justice had occurred, the prejudice suffered by the petitioners amounted to a complete deprivation of freedom by virtue of a longer-than-deserved prison sentence. *See Davis*, 417 U.S. at 346, 94 S. Ct. at 2305 (recognizing that an error resulting in a sentence that punished the petitioner for "an act that the law does not make criminal" was sufficient to satisfy the complete miscarriage of justice standard); *Johnson*, 544 U.S. at 303, 125 S. Ct. at 1577 (recognizing a basis for relief when a sentence is erroneously enhanced under the mandatory guidelines). Those opinions tell us that the relief provided by the complete miscarriage of justice standard should be reserved for those rare instances like this one when a person's individual freedom is at stake.

It seems clear to me based on this record that it is highly unlikely that Spencer would receive the same sentence on remand in the absence of the career offender enhancement. At sentencing, the sentencing judge's statements suggested that Spencer's sentence would be different in the absence of the career-offender

enhancement: "You're a young man.  150 months is a long time to spend in prison."  The judge told Spencer that in the absence of the career-offender enhancement, "instead of looking at a 32, you'd have been looking at a level 23.  It's, in essence, half the sentence, in essence."  Sentencing Tr. at 20 (Record No. 49).  The erroneous enhancement increased Spencer's guideline range from 70 to 87 months to 151 to 180 months.

The Majority touts that finality is an important principle of vital importance to our system of justice.  But, "[W]ithout justice, finality is nothing more than a bureaucratic achievement," *Gilbert*, 640 F.3d 1293, 1337 (11th Cir. 2011) (en banc) (Hill, J., dissenting), so we should resist the temptation to "prostrate[] [ourselves] at the altar of finality, draped in the sacred shroud of judicial restraint," *Whiteside v. United States*, 748 F.3d 541, 556 (4th Cir. 2014) (Davis, J., concurring), *reh'g en banc granted*, 2014 WL 337798 (July 10, 2014), when the facts indicate that a particular result is completely unjust.

Accordingly, I would treat Spencer's claim as cognizable and consider this appeal on the merits.

MARTIN, Circuit Judge, joined by WILSON and JORDAN,

Circuit Judges, dissenting:

The majority and dissenting opinions issued by the court today set out the academic debate over the scope of relief provided by 28 U.S.C. § 2255 to prisoners now in federal prisons, based on incorrect sentences mistakenly imposed by federal judges. I write separately to talk about Kevin Spencer, and what has happened to him as a criminal defendant who came into federal court in 2007.

## I.

At the age of 21, Mr. Spencer walked into a federal courtroom in Jacksonville, Florida, and pleaded guilty to one count of distributing crack cocaine, a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Specifically, Mr. Spencer admitted to selling a "cooperating individual two pieces of crack cocaine in exchange for $20." The crack weighed less than a gram. And as the majority opinion extensively recounts, this 2007 conviction was not Mr. Spencer's first brush with the law. His earlier legal problems included another conviction for selling cocaine, from when he was 17 years old. Also, at the age of 18, Mr. Spencer pleaded guilty in state court to felony child abuse, under Florida Statute § 827.03.

Because the federal sentencing scheme is set up to cause those who have a violent past to serve longer sentences, the nature of Mr. Spencer's earlier criminal problems was highly relevant. Before his sentencing hearing in federal court, Mr.

36

Spencer got notice that the presentence report prepared for the judge characterized his felony child abuse conviction as a "crime of violence."

The 2006 Guideline Manual, used for Mr. Spencer's sentencing, defines a crime of violence to include a state crime, punishable by a term of more than a year, that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." United States Sentencing Guidelines (USSG) § 4B1.2(a)(1)–(2) (2006). Mr. Spencer argued to his sentencing court that his felony child abuse conviction, which arose out of his relationship with a female four years his junior, did not meet this definition. At the time of Mr. Spencer's 2007 sentencing, the government took the contrary view, and argued to the sentencing court (quite extensively) that Mr. Spencer's felony child abuse conviction was a violent crime.

In keeping with the government's 2007 argument that Mr. Spencer's earlier conviction for felony child abuse was a crime of violence, the District Court overruled Mr. Spencer's objection and sentenced him as a "career offender." See USSG § 4B1.1. Under the U.S. Sentencing Guidelines, this designation put him into "a category of offender subject to particularly severe punishment." Buford v. United States, 532 U.S. 59, 60, 121 S. Ct. 1276, 1278 (2001). That is because the

career offender guideline was created by a congressional directive that required the U.S. Sentencing Commission to set guideline ranges "at or near the maximum" authorized by statute for certain defendants who have two or more prior convictions for crimes of violence or drug trafficking offenses.  See 28 U.S.C. § 994(h).  Just as Congress intended, the career offender guideline had a profound effect on Mr. Spencer's sentence.

For Mr. Spencer, his career offender status got him a sentence nearly twice as long as would otherwise be imposed.  The District Court said as much at the time of sentencing, stating:

> Mr. Spencer, had you not had that career—career offender enhancement, instead of looking at a level 32, you'd have been looking at a level 23.[1]  It's, in essence, half the sentence, in essence.
>
> So you're paying a big price today for your record.  What happens under the sentencing guidelines when you commit some of the crimes that you have committed, the sentencing guidelines come down hard on people, and they come down hard on people for a reason.

Mr. Spencer's non-career offender guideline range was 70 to 87 months based on the total amount of drugs involved in his offense, his criminal history, and his

---

[1]  I understand the District Court to be comparing Mr. Spencer's career offender base offense level without deductions for acceptance of responsibility (offense level 32) to his non-career offender base offense level with a three-level reduction for acceptance of responsibility (offense level 23).

acceptance of responsibility.[2]  His career offender guideline range was 151 to 188 months.  Mr. Spencer was sentenced to 151 months.  Assuming a low-end guideline sentence, this is an 81 month (6 ¾ years) difference.  Mr. Spencer's expected release date from his 151 month sentence is September 18, 2017.  See Bureau of Prisons Inmate Locator, http://www.bop.gov/inmateloc/.  If he had been sentenced without the enhancement for a violent crime (i.e., not as a career offender), he would no longer be serving time in the federal penitentiary.

## II.

Since 2007, when Mr. Spencer was first labeled a career offender, he has effectively been punished twice again for that status.  As discussed, his sentence was imposed on August 16, 2007.  The U.S. Sentencing Commission has lowered the guideline ranges for defendants convicted for crack cocaine offenses two times since that date.  First, on November 1, 2007, the Commission issued Amendment 706, which lowered the crack sentencing guidelines for most crack offenses by two

---

[2] Although Mr. Spencer's conviction was for the sale of .06 grams of crack cocaine, he was punished for 5.5 grams of crack cocaine, based on his relevant conduct.  The sentencing guideline that applies to drug offenses is USSG § 2D1.1.  It provides that a defendant's base offense level is set by the amount of drugs involved in the offense.  At the time of Mr. Spencer's sentencing in 2007, the guidelines provided a base offense level 26 for offenses involving at least 5 grams but less than 20 grams of crack cocaine.  Drug Quantity Table, USSG § 2D1.1(c)(7) (2006).  He received a three level reduction for acceptance of responsibility which brought his non-career offender total offense level down to 23.  Mr. Spencer's non-career offender criminal history category was IV.  But a career offender criminal history category mandates a criminal history category of VI.  See USSG § 4B1.1(b).  The maximum sentence allowed by statute in Mr. Spencer's case was 20 years without any minimum mandatory sentence.  See 21 U.S.C. § 841(b)(1)(C).

levels based on drug quantity. See USSG App. C, Amend. 706 (2007). The Commission put Amendment 706 in place, effective March 3, 2008, not only for those who would be convicted of crack offenses in the future, but also for those who were already serving sentences for crack crimes. See USSG App. C, Amend. 713 (Supp. May 1, 2008). This allowed some offenders who had been convicted of crack offenses before November 1, 2007, to get a two level reduction in their sentence pursuant to 18 U.S.C. § 3582(c)(2). See id. (listing Amendment 706 under USSG § 1B1.10(c) as a retroactively applicable amendment). But Mr. Spencer was not eligible for a sentence reduction under Amendment 706 because he had been sentenced as a career offender. See United States v. Moore, 541 F.3d 1323, 1330 (11th Cir. 2008) (holding that Amendment 706 does not apply to defendants who were sentenced as career offenders). If Mr. Spencer had not been sentenced as a career offender, his sentencing range could have been reduced to 51 to 71 months.[3]

Then, in 2010, Congress enacted the Fair Sentencing Act, which became effective on August 3, 2010. Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111–220 § 2(a), 124 Stat. 2372 (2010). The FSA "reduc[ed] the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1." Dorsey v. United States, ___ U.S.

---

[3] Based on 5.5 grams of crack cocaine, Mr. Spencer's sentencing guideline base offense level would have been reduced from 26 to 24, see Drug Quantity Table, USSG § 2D1.1(c)(8) (2007). This in turn would have reduced his total offense level to 21, criminal history category IV.

40

___, ___, 132 S. Ct. 2321, 2326 (2010).  The FSA was Congress' response to nearly two decades of criticism from the "Commission and others in law enforcement community" about "Congress' decision to set the crack-to-powder minimum ratio at 100–to–1."  Id. at 2328; see also id. at 2328–29 (citing four separate Sentencing Commission reports telling Congress that the ratio was "too high and unjustified").  Among other things, Commission research showed "the relative harm between crack and powder cocaine less severe than 100–to–1" and "the public had come to understand sentences embodying the 100–to–1 ratio as reflecting unjustified race-based differences."  Id. at 2328.  In section 8 of the FSA, Congress directed the Commission to promulgate conforming emergency guideline amendments to implement the Act.  See FSA § 8, 124 Stat. at 2374.  The Commission did just that through temporary Amendment 748, which once again lowered the base offenses (and therefore the sentences) for crack cocaine offenses in the Drug Quantity Table in USSG § 2D1.1(c), effective November 1, 2010.  See Supp. to the 2010 Guidelines Manual, Amend. 748 (Nov. 1, 2010).  This amendment was made permanent by Amendment 750 and retroactively applicable by Amendment 759.  See USSG App. C, Amends. 750, 759 (2011).

41

Under Amendment 750, Mr. Spencer's sentencing guidelines range would have been reduced to 24 to 30 months.[4] So now we know that Mr. Spencer's 151-month career offender sentence is at least six times the low end of the guideline range he would receive if he were sentenced today with the full benefit of these reductions in the crack sentencing guidelines. But once again, Mr. Spencer was not eligible for a sentence reduction under Amendment 750 because he had been designated a career offender back in 2007. See United States v. Lawson, 686 F.3d 1317, 1321 (11th Cir. 2012) (per curiam); see also Moore, 541 F.3d at 1327, 1330.

## III.

We also now know that Mr. Spencer's argument at the time of his sentencing that he was not a career offender was prescient. Since he made that argument at his sentencing hearing, the Supreme Court has schooled us all about how to decide whether a federal defendant's prior state conviction should be counted as a violent felony.[5] Based on this teaching, the government has come to

---

[4] Mr. Spencer's 5.5 grams of crack cocaine would have given him a base offense level 16 under Amendment 750. See USSG § 2D1.1(c)(12). Taking into account his acceptance of responsibility, his total offense level would have been 13, criminal history category IV, without the career offender designation.

[5] See, e.g., Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276 (2013); Sykes v. United States, ___ U.S. ___, 131 S. Ct. 2267 (2011) (considering whether Indiana felony offense of knowing or intentional vehicular flight from a law enforcement officer is a "violent felony" under the ACCA); Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008) (considering whether New Mexico felony offense of driving under the influence of alcohol is a "violent felony" under the ACCA); Chambers v. United States, 555 U.S. 122, 129 S. Ct. 687 (2009)

42

agree with the argument made by Mr. Spencer's counsel back in 2007—that Spencer's felony child abuse conviction is not a crime of violence.

I believe the federal courts as an institution would be stronger if we simply acknowledge that we got Mr. Spencer's sentence wrong from the start, and fix it. The government now concedes that, contrary to its argument to Mr. Spencer's sentencing court in 2007, he had no prior crime of violence conviction at the time he was sentenced. But the government nevertheless urges this Court to lay the burden of its mistaken 2007 argument upon Mr. Spencer. The majority of this Court has done just that. So Mr. Spencer will continue to serve an extra many years of a mistaken sentence, even though he has been right about how we got his sentence wrong from the start.

The Antiterrorism and Effective Death Penalty Act of 1996 allows one Section 2255 petition to be brought as a matter of right. For Mr. Spencer, this is it. This Court has spent a lot of time talking about the limitations on a federal inmate's ability to get relief by way of a second or successive petition under Section 2255(h).[6] But those opinions do not govern Mr. Spencer's case. This is

---

(considering whether Illinois failure-to-report felony offense is a "violent felony" under the ACCA); James v. United States, 550 U.S. 192, 127 S. Ct. 1586 (2007) (whether Florida felony offense of attempted burglary is a "violent felony" under the ACCA's elements prong).

[6] See, e.g., Mackey v. Warden, FCC Coleman-Medium, 739 F.3d 657 (11th Cir. 2014); Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013); Turner v. Warden, Coleman FCI (Medium), 709 F.3d 1328 (11th Cir. 2013); Williams v. Warden, Fed. Bureau of

his first petition. The government recognizes (and the majority agrees) that the Supreme Court has never gone as far as it asks us to go in denying relief based on a first petition. More to the point, the government acknowledges that the Supreme Court has never said that so-called Sentencing Guideline errors are beyond the reach of the relief offered by § 2255. And on that point, it cannot be denied that the Supreme Court has allowed a federal prisoner to use a § 2255 petition to reduce his sentence where his prior conviction, used to support his career offender enhancement, was vacated. See Johnson v. United States, 544 U.S. 295, 303, 125 S. Ct. 1571, 1577 (2005) ("[A] defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated."). This is part of what makes the majority opinion so hard to understand. It punishes Mr. Spencer for a mistake we made in sentencing him when neither Supreme Court precedent nor the plain language of § 2255 requires this result. Indeed, Judge Rosenbaum is persuasive in her view that Johnson requires the result opposite of that reached by the majority here.

IV.

I can think of no good reason not to give Mr. Spencer his correct sentence. He timely objected to his career offender designation at the time he was sentenced.

---

Prisons, 713 F.3d 1332 (11th Cir. 2013); Gilbert v. United States, 640 F.3d 1293 (11th Cir. 2011) (en banc).

And on direct appeal, Mr. Spencer again pressed his argument that he should not have been classified as a career offender. See United States v. Spencer, 271 F. App'x 977, 977–78 (11th Cir. 2008) (per curiam). We affirmed his career offender classification. Id. at 78. A little more than six months later, Mr. Spencer filed his first § 2255 motion to vacate and correct his sentence—which is the subject of this appeal—in which he argued that he is not a career offender because his prior conviction for child abuse is not a crime of violence based upon the Supreme Court's intervening decision in Begay. There is no procedural obstacle preventing our granting habeas relief to Mr. Spencer such as a procedural default, statute of limitations problems, or even retroactivity concerns. Despite all of this, the Majority concludes that Mr. Spencer cannot challenge the sentencing error in his first § 2255 petition unless "he is either actually innocent of his crime or . . . a prior conviction used to enhance his sentence has been vacated." Maj. Op. at 11.

It seems to me to draw an arbitrary line to say (on the one hand) that a prisoner may use § 2255 to collaterally attack his career offender status if that prior conviction has been vacated, see Majority Op. at 11 (citing Johnson, 544 U.S. at 303, 125 S. Ct. at 1577), but not (on the other) if that same prior conviction was never a qualifying conviction in the first place—in light of an authoritative statutory interpretation by the Supreme Court. For the defendant in both situations, we know with certainty he is not a career offender. And assuming similarly

45

situated defendants, we also know that his career offender sentence is below the statutory maximum, with the District Court therefore having discretion to resentence the defendants to the same sentence which was mistakenly imposed to begin with.  For both defendants we know, because of what happened later, that the District Court dropped the anchor of its sentencing analysis in the wrong place.  See Peugh v. United States, ___ U.S. ___, ___, 133 S. Ct. 2072, 2084 (2013) (recognizing the Sentencing Guidelines remain the "lodestone of sentencing" "even after Booker rendered [them] advisory").  I recognize that the Majority makes a distinction between these two types of defendants, i.e., legal and factual innocence, see Majority Op. at 20, but this distinction is nowhere found in § 2255.

Indeed, it may be that the balance of equities favors granting habeas relief to people like Mr. Spencer—as between the two.  Where a prior conviction has been vacated by a state court after a defendant was sentenced in federal court, that defendant was properly characterized as a career offender at the time he was sentenced.  The burden is on him to come back into federal court with proof that his later vacated prior conviction should not have been used to enhance his federal sentence.  For Mr. Spencer, he was wrongfully characterized as a career offender from the day his sentence was imposed.  That is because we now have "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."  Rivers v. Roadway Express,

46

Inc., 511 U.S. 298, 312–13 & n.12, 114 S. Ct. 1510, 1519 & n.12 (1994); see also

Bunkley v. Florida, 538 U.S. 835, 840–42, 123 S. Ct. 2020, 2022–24 (2003); Fiore

v. White, 531 U.S. 225, 226, 121 S. Ct. 712, 713 (2001).

I fully understand that finality is an important consideration in deciding the

scope of collateral relief in § 2255 proceedings.  But Mr. Spencer also has an

important interest in correcting a wrongfully imposed sentence.  I had an earlier

occasion, in the context of a second or successive habeas petition, to review the

reasons given in support of finality in sentencing.  Those reasons include:

> (1) to build confidence in the integrity of the judicial system; (2) to minimize administrative costs and delay; (3) to avoid spoliation of evidence; and (4) to honor comity.  See United States v. Addonizio, 442 U.S. 178, 184 n.11, 99 S. Ct. 2235, 2240 n. 11, 60 L. Ed. 2d 805 (1979); see also Paul M. Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441, 451–53 (1962).

Gilbert, 640 F.3d at 1334 (Martin, J., dissenting).  None of these values compel our

decision today.

In the intervening years since this Court decided the Gilbert case, I have

gained no insight into how insisting on the finality of a sentence that was

calculated based on a judge-made mistake instills confidence in the courts.  I

cannot imagine what words might explain to Mr. Spencer (or those who care about

him) why the courts of this great nation are impotent to fix a mistake we made in

formulating his sentence.  This is particularly true when he has told us about the

47

mistake since the day we made it, and it is a mistake now acknowledged by even his adversary.

Now after close to five years pending in this Court (not counting the time in district court), with enormous resources already devoted to Mr. Spencer's case, no one can make a straight-faced argument that denying Mr. Spencer relief will save administrative costs or minimize delay. I hear the idea that today's ruling will save costs and delay for cases we consider in the future. But the judicial branch of government is the one where people come into court, like Mr. Spencer did here, seeking justice for their own individual case. It is not the role of the courts to enact rules of sweeping administrative convenience.

Most provocative for me (as to this reason given in support of finality) is that today's ruling will <u>increase</u> costs in the criminal justice system to the extent that the U.S. taxpayer will have to spend dozens of thousands of dollars incarcerating Mr. Spencer for time he should not be in prison. At oral argument, the government was not able to identify a single law enforcement purpose served by keeping Mr. Spencer in jail for years beyond what his sentence should rightfully have been. When asked about the existence of a law enforcement purpose for Mr. Spencer's continued incarceration, the government responded:

> I can't speak to Mr. . . . I don't know his personal record. I don't know, you know, there is no information in the record about how he has behaved or whether he needs, you know, additional. . . . I can't speak to that. That would be speculating beyond the record. But what

48

I can say is there are systemic interests in keeping individuals, not just Mr. Spencer, but all the similarly situated individuals. . . .

This seems important for two reasons.  First, Attorney General Eric Holder has said that "[t]oo many Americans go to too many prisons for far too long, and for no truly good law enforcement reason."  Attorney General Eric Holder, Remarks at the Annual Meeting of the Amer. Bar Assoc. House of Delegates (Aug. 12, 2013) (transcript available at http://www. justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html); see also Douglas A. Berman, Symposium, Re-Balancing Fitness, Fairness, and Finality for Sentences, 4 Wake Forest J.L. & Pol'y 151, 176 (2004) (arguing that "modern mass incarceration in the United States now calls for policy-makers, executive officials, and judges to be less concerned about sentence finality, and more concerned about punishment fitness and fairness when new legal developments raise doubts or concerns about lengthy prison sentences").  Second, career offender sentences are among the most severe sentences imposed, so it makes sense to be sure they are given only to those deserving of this designation.  See Amy Baron–Evans, Jennifer Coffin & Sara Silva, Deconstructing the Career Offender Guideline, 2 Charlotte L. Rev. 39, 40–41 (2010) (citing United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, at 133–34 (2004)).

By denying Mr. Spencer relief today, we lavishly spend U.S. taxpayer money and resources for no law enforcement purpose that I know of.

In terms of other reasons supporting finality, there is no issue about spoliation of evidence here. As one scholar aptly put it, "records of convictions do not go 'stale' in the way that witnesses and some types of physical evidence may." Sarah French Russell, Reluctance to Resentence: Courts, Congress, and Collateral Review, 91 N.C. L. Rev. 79, 153 (2012). Mr. Spencer has been and will remain convicted of this crime for which he is incarcerated. There are no disputed facts left for us to decide in his case. See generally Meghan J. Ryan, Symposium, Finality and Rehabilitation, 4 Wake Forest J.L. & Pol'y 121, 135–37 & n.92 (2014) (noting that "scholars have suggested that traditional interests underlying the finality doctrine have significantly less relevance in the sentencing context"). Today, the only question before us is whether to end his sentence now or leave it to run into the future. And finally, there is no issue of comity here. Mr. Spencer is serving a federal sentence imposed in federal court. We review our own mistake, and there is no state act requiring our deference.

## V.

When 28 U.S.C. § 2255 became law, it was challenged as an unconstitutional suspension of the writ. Of course, the United States Constitution protects the writ of habeas corpus, providing that "The Privilege of the Writ of

Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. The Supreme Court turned back the challenge against 28 U.S.C. § 2255, holding that the statute was as broad as the writ of habeas corpus. United States v. Hayman, 342 U.S. 205, 72 S. Ct. 263 (1952). And the Supreme Court has continued since that time to "emphasize[] the fundamental importance of the writ of habeas corpus in our constitutional scheme." Johnson v Avery, 393 U.S. 483, 485, 89 S. Ct. 747, 749 (1969). Indeed, the Supreme Court has "constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme" and "steadfastly insisted that there is no higher duty than to maintain it unimpaired." Id. (quotation marks omitted). I believe today's decision by the Majority fails to carry out this important duty.

I respectfully dissent from the denial of relief to Mr. Spencer.

JORDAN, Circuit Judge, joined by WILSON, MARTIN, and ROSENBAUM, Circuit Judges, dissenting:

At the end of the day, what constitutes a fundamental defect resulting in a complete miscarriage of justice comes down to a matter of considered judgment. In my judgment, having an individual serve an additional 81 months in prison due to an erroneous career offender designation under the advisory Sentencing Guidelines constitutes such a miscarriage of justice, and for that reason I respectfully dissent.

## I

Kevin Spencer is serving more than 12 years in prison (151 months to be exact) for selling $20 worth of crack cocaine. The panel found, *see Spencer v. United States*, 727 F.3d 1076, 1100 (11th Cir. 2013), the government now concedes, *see* En Banc Brief for the United States at 57-58, and the majority does not dispute, that Mr. Spencer's mistaken career offender designation more than doubled his advisory sentencing range from 70-87 months to 151-188 months. For those of us familiar with—and sometimes numbed by—the ranges produced by application of the Sentencing Guidelines, it may be easy to overlook the dramatic increase resulting from the error. To put it in perspective, the 81-month increase is roughly the time needed to complete both college and law school.

Mr. Spencer timely and consistently objected to the career offender designation, only to be told he was wrong.  As it turns out, he was right.  Unfortunately, the majority now rules that Mr. Spencer cannot use 28 U.S.C. § 2255 to correct the error.

## II

The majority holds that Mr. Spencer's claim is not cognizable in a timely-filed first motion to vacate under § 2255 for two basic reasons.  First, Mr. Spencer's 151-month sentence, though erroneous, was within the statutory maximum.  Second, Mr. Spencer's prior conviction has not been vacated.  Neither reason, it seems to me, is convincing.

## A

Under § 2255, a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Despite the breadth of this statutory language, the Supreme Court has held that not "every asserted error of law can be raised on a § 2255 motion." *Davis v. United States*, 417 U.S. 333, 346 (1974).  Instead, "the appropriate inquiry" when dealing with a non-constitutional

53

claim is "whether the claimed error of law [is] a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quotation marks omitted). *See also Hill v. United States*, 368 U.S. 424, 428 (1962) (holding that collateral relief is permitted where there is a "fundamental defect which inherently results in a complete miscarriage of justice," "an omission inconsistent with the rudimentary demands of fair procedure," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent").

The Supreme Court has never defined the phrase "the laws of the United States" in § 2255. But there are strong reasons to believe that a career offender error under the advisory Sentencing Guidelines fits easily within that language. First, an error in computing the guideline range renders a sentence procedurally unreasonable and reversible on direct appeal. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014). Second, the Supreme Court has recently held that the incorrect application of the advisory Sentencing Guidelines can result in an *ex post facto* violation. In so ruling, the Court expressly rejected the argument that "the Sentencing Guidelines lack sufficient legal effect to attain the status of a 'law' within the meaning of the *Ex Post Facto* Clause." *Peugh v. United States*, 133 S. Ct. 2072, 2085-87 (2013). If the advisory Sentencing Guidelines are laws for *ex post facto* purposes, it is difficult to see why they are not also laws under § 2255.

54

**B**

Contrary to the majority's suggestion, there is no absolute rule (announced by the Supreme Court or by us) that a prisoner serving a sentence less than the statutory maximum (regardless of the number of additional years in prison he or she is serving as a result of the alleged error) cannot establish that a sentencing error constitutes a fundamental defect inherently resulting in a complete miscarriage of justice. That may be the rule that the majority thinks appropriate, but it is certainly not one carved in precedential stone. As the United States recognized at oral argument, the Supreme Court has left open whether any non-constitutional sentencing errors are cognizable under § 2255. *Cf. Davis*, 417 U.S. at 345 ("[W]e conclude that the text of the statute cannot sustain the Government's position that only claims of 'constitutional dimension' are cognizable under §2255.").

Before discussing the relevant Supreme Court decisions on the scope of § 2255, a cautionary note is in order. Most of the important decisions applying the complete miscarriage of justice standard were decided in the 1960s and 1970s, at a time when federal sentencing was very different than it is today. Back then, there were no Sentencing Guidelines, mandatory or advisory. And federal sentences at or below the statutory maximum generally could not be reviewed on direct appeal. *See United States v. Tucker*, 404 U.S. 443, 447 (1972) ("a sentence imposed by a

55

federal district judge, if within statutory limits, is generally not subject to review"); *United States v. Vice*, 562 F.2d 1004, 1005 (5th Cir. 1977) ("The sentence itself is within the statutory limits and therefore is not subject to appella[te] review."). Now, of course, we have Sentencing Guidelines, currently of an advisory nature, and the length of a sentence can be reviewed on direct appeal for substantive reasonableness. So we need to be careful when analyzing or relying on Supreme Court cases from 40 to 50 years ago to decide the issue before us today. Nevertheless, a look at that precedent convinces me that Mr. Spencer's claim is cognizable under § 2255.[1]

## C

The Supreme Court decided *United States v. Behrens*, 375 U.S. 162 (1963), less than two years after it formulated the complete miscarriage of justice standard in *Hill*, 368 U.S. at 428. *Behrens* affirmed the grant of § 2255 relief to a defendant who was not present when his sentence was ultimately imposed in violation of a federal rule, even though that sentence was within (and well below) the statutory limit. Under the statutory scheme existing at the time, the district court committed the defendant (who was convicted of assault with intent to murder) to the custody of the Attorney General for the statutory maximum sentence of 20 years pending a

---

[1] For a chronological summary of how federal criminal procedure has changed since § 2255 was enacted in 1948, see Sarah French Russell, *Reluctance to Resentence: Courts, Congress, and Collateral Review*, 91 N. C. L. Rev. 79, 90-97 (2012).

study by the Director of the Bureau of Prisons.  At the time of the initial sentencing hearing, the "defendant and his counsel were afforded the usual right of allocution[.]"  *Behrens v. United States*, 312 F.2d 223, 227 (7th Cir. 1962) (Knoch, J., dissenting).

The district court's order in *Behrens* "provided that after the results of the study and the Director's recommendations were reported to the court, [the defendant's] commitment, deemed to be for 20 years, would be subject to modification in accordance with . . . 18 U.S.C. § 4208(b)."  *Behrens*, 375 U.S. at 163.  After receiving the report, the district court—without the presence of the defendant or his counsel—entered an order reducing the defendant's sentence from 20 years to 5 years.  *Id.* at 163-64.  Despite acknowledging that a defendant's presence is not always required when a sentence is modified, the Supreme Court ruled that the defendant should have been present—under Rule 32(a) of the Federal Rules of Criminal Procedure—when the district court reduced his sentence.  Otherwise, he would be denied the right to allocute and present information in mitigation of punishment before the final imposition of sentence.  *Id.* at 166 ("We hold that it was error to impose this sentence in the absence of [the defendant] and his counsel.").

The Supreme Court in *Behrens*, therefore, used § 2255 to set aside a sentence below the statutory maximum (i.e., a sentence the majority would

57

characterize as "lawful") for a non-constitutional violation (i.e., the violation of a federal rule). *Behrens*, which has not been overruled (or criticized) by the Supreme Court since its issuance, and whose continued viability we recognized in *United States v. Tamayo*, 80 F.3d 1514, 1518 n.5 (11th Cir. 1996), runs counter to the majority's restrictive interpretation of § 2255.

There are, of course, a number of Supreme Court cases holding that certain types of non-constitutional error are not subject to collateral attack. These include *Hill*, 368 U.S. at 428 (defendant who was not affirmatively told of his right to allocute under Rule 32(a) could not use § 2255 to set aside his sentence), and *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (defendant who was not informed of special parole term during guilty plea colloquy could not use § 2255 to set aside his conviction). But these decisions are relatively narrow in scope.

In *Hill*, the defendant "was [not] affirmatively denied an opportunity to speak," the district court was not "misinformed or uninformed as to any the relevant circumstances," and there was "no claim that the defendant would have had anything at all to say if he had been formally invited to speak." 368 U.S. at 429. There was, in other words, no prejudice; "all that [wa]s shown [wa]s a failure to comply with the formal requirements of the Rule." *Id.* ("Whether § 2255 relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances is a question we . . . do not consider.").

58

Similarly, in *Timmreck* the defendant alleged only a "technical violation" of Rule 11, and did not argue "that he was actually unaware of the special parole term or that, if he had been properly advised by the [district court], he would not have pleaded guilty." 441 U.S. at 784. In other words, the defendant did not assert that he suffered any prejudice from the Rule 11 violation. "As in *Hill*," the Supreme Court in *Timmreck* found it "unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." *Id.* at 784-85.

Not surprisingly, the Supreme Court has explained its holdings in *Hill* and *Timmreck* as being based on the lack of prejudice. *See Peguero v. United States*, 526 U.S. 23, 27-28 (1999). "Our precedents establish," the Supreme Court said, "as a general rule . . . that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief *only when the defendant is prejudiced* by the court's error." *Id.* at 27 (emphasis added). Here, Mr. Spencer has certainly shown that he was prejudiced by the erroneous career offender designation; his advisory guideline range increased by 81 months as a result of the error. We should heed the Supreme Court's characterization of its own decisions and not read cases like *Hill* and *Timmreck* as barring § 2255 relief on advisory guideline claims no matter what the circumstances. *See also Reed v. Farley*, 512 U.S. 339, 357 (1994) (Scalia, J., concurring in part and concurring in the judgment)

59

("As for [the reservation in] *Hill* and *Timmreck*[ ] of the question whether habeas would be available 'in the context of other aggravating circumstances,' that seems to me clearly a reference to circumstances *that cause additional prejudice to the defendant*, thereby elevating the error to a fundamental defect or a denial of rudimentary procedural requirements . . . .").

## D

To support its contention that so-called "lawful" sentences—i.e., those not exceeding the statutory maximum—cannot be challenged under § 2255 for advisory guideline errors, the majority relies heavily on *United States v. Addonizio*, 442 U.S. 178 (1979). That case, however, cannot bear the weight the majority places on it.

The defendant in *Addonizio* filed a § 2255 motion after a post-sentencing change in the Parole Commission's policies defeated the sentencing court's subjective expectation that he "would be actually confined for a period of approximately three and one-half to four years of the ten-year sentence." *Id.* at 183. The Supreme Court held that the defendant failed to establish a fundamental defect that could provide a basis for a collateral attack pursuant to § 2255. According to the majority, the Supreme Court ruled this way in *Addonizio* simply because the defendant's sentence was less than the statutory maximum term that could have been imposed. But there was much more than that to the Supreme

60

Court's holding.  The Court concluded that the defendant's claim was "based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing [court]."  *Id.* at 187.  As a result, the Court explained, "[t]he claimed error here—that the [court] was incorrect in [its] assumptions about the future course of parole proceedings—d[id] not meet any of the established standards of collateral attack."  *Id.* at 186.  In sum, "[t]here [was] no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid."  *Id.* Thus, although the sentence imposed "was and [remained] a lawful one," *id.* at 187, that fact was not the sole independent basis for the Court's decision.

Unlike the defendant in *Addonizio*, Mr. Spencer points to an "objectively ascertainable [legal] error," and one that I believe is of a "fundamental character." That error was the incorrect and prejudicial calculation of the advisory Sentencing Guidelines, which the Supreme Court has told us "anchor both the district court's discretion and the appellate review process[.]" *Peugh*, 133 S.Ct. at 2087.  Nothing in *Addonizio* prohibits Mr. Spencer from collaterally challenging his below-the-maximum sentence.  *See Behrens*, 375 U.S. at 165-66.[2]

---

[2]In today's sentencing regime, a claim similar to the one rejected in *Addonizio* would be a contention that the district court, in imposing sentence, overestimated the amount of good time credit a defendant would receive from the Bureau of Prisons for a specific term of imprisonment.

### III

Significantly, the Supreme Court and our circuit have held that a federal prisoner sentenced as a career offender may use § 2255 to vacate his sentence where a prior predicate conviction has been set aside post-sentencing, regardless of whether the sentence exceeded the statutory maximum. *See, e.g.*, *Johnson v. United States*, 544 U.S. 295, 298 (2005); *Stewart v. United States*, 646 F.3d 856, 858-59 (11th Cir. 2011). The precursor to cases like *Johnson* and *Stewart* is *Tucker*, 404 U.S. at 448-49, in which the Supreme Court allowed a defendant to vacate his federal sentence on a § 2255 motion because certain prior state convictions, taken into consideration by the district court, had later been set aside due to a violation of the right to counsel.

In a *Johnson/Stewart* scenario, the federal career offender sentence initially imposed was purportedly "lawful" within the meaning of *Addonizio* because it was not above the statutory maximum and because the prior state conviction had not been vacated or overturned at the time of the federal sentencing hearing. Nevertheless, we allow a defendant who later gets a prior predicate conviction overturned to return to federal court and use § 2255 to vacate his then lawfully-imposed career offender federal sentence and be resentenced without the (now

*See generally* 18 U.S.C. § 3624(b). Such a claim is far removed from the one presented by Mr. Spencer.

62

non-existent) prior conviction.  We do this, of course, because otherwise there would be a miscarriage of justice.

The United States conceded during oral argument that the *Johnson/Stewart* scenario is "not materially different" from the one we confront here.  From my perspective, that was a candid, apt, and telling concession.  There is no principled reason for allowing § 2255 review of a career offender sentence where a prior conviction has been vacated post-sentencing, while at the same time precluding § 2255 review of a career offender sentence where a prior conviction, due to a retroactive change in Supreme Court precedent, no longer constitutes a predicate offense.  Under either scenario, the pertinent prior conviction cannot lawfully be used to establish career offender status, and the sentence imposed constitutes a miscarriage of justice.  In my view, *Johnson* and *Stewart* compel us to set aside Mr. Spencer's sentence.[3]

---

[3] The rule established in *Johnson*, I note, is not limited to career offender enhancements. Some circuits have applied *Johnson* to allow defendants to reopen any federal sentence enhanced by prior convictions that are subsequently vacated, set aside, expunged, or dismissed. *See, e.g.*, *United States v. Cox*, 83 F.3d 336, 339 (10th Cir. 1996) ("Although defendant's sentence was correct at the time of sentencing, subsequent events suggest that a different sentence now may be appropriate. Because there may be a change in defendant's criminal history category after his sentencing and direct appeal, the district court should have reopened defendant's sentence."); *United States v. Doe*, 239 F.3d 473, 475 (2d Cir. 2001) ("We agree with our sister Circuits and hold that defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions."); *United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014) (following *Stewart* in case where vacated prior conviction had affected defendant's criminal history score).

The majority says that, because the Sentencing Guidelines are advisory, the district court could have imposed the same sentence even without characterizing Mr. Spencer as a career offender. The latter observation is correct, but it is also irrelevant to the cognizability question because the Supreme Court has told us so.

In *Tucker*, the United States argued against granting § 2255 relief because, given the defendant's background and other information possessed by the district court, "it [was] highly unlikely that a different sentence would have been imposed even if the [court] had known that two of the [defendant's] prior convictions were constitutionally invalid." 404 U.S. at 446. Even though *Tucker* was decided at a time when district courts had virtually unreviewable discretion to sentence within statutory limits, the Supreme Court rejected this argument, explaining that it was dealing not "with a sentence imposed in the informed discretion of a [district court], but with a sentence founded at least in part upon misinformation of constitutional magnitude." *Id.* at 447. And because the district court took the prior (and now-vacated) convictions into account, vacatur was required. *Id.*

The same, I submit, should happen here. The district court's sentence was based upon, and took into account, a legally incorrect anchor: a career offender designation which substantially increased Mr. Spencer's advisory guideline range. The "real question," in the words of *Tucker*, is whether Mr. Spencer's 151-month sentence "*might have been different* if the sentencing [court] had known [that Mr.

64

Spencer was not a career offender under the Sentencing Guidelines].” *Id.* at 448

(emphasis added). For me, the answer to that question is an emphatic yes.

Although district courts do not presume that the advisory guideline range is

reasonable, *see Gall*, 552 U.S. at 50, they certainly know that within-guidelines

sentences are effectively immune from reversal on appeal—think of them as

appellate safe harbors—and can feel comfortable in imposing such sentences. We

routinely tell district courts that we ordinarily expect a sentence within the

Sentencing Guidelines to be reasonable, s*ee, e.g.*, *United States v. Hunt*, 526 F.3d

739, 746 (11th Cir. 2008), and it is folly to pretend that such pronouncements do

not have an impact on sentencing decisions in the trenches.

In any event, a district court is always free to specify that it would have

imposed the same sentence even if its guideline calculations turn out to be

incorrect. If it does so, an appellate court can decide on the merits whether the

sentence in question, even without the guideline error, is reasonable. *See, e.g.*,

*United States v. Keene*, 470 F.3d 1347, 1348-50 (11th Cir. 2006). Even if we

engaged in the speculation suggested by the majority, there is no reason to presume

that the district court here would have imposed (or will now impose) the same

sentence absent the erroneous career offender designation, because it did not say

(or suggest) that it would have done so.

65

On remand, Mr. Spencer's corrected guideline range of 70-87 months would provide the anchor for the exercise of the district court's discretion and for the reasonableness review that would follow on appeal. *See Peugh*, 133 S. Ct. at 2087. *See also Rita v. United States*, 551 U.S. 338, 347 (2007) (holding that appellate courts may presume that a sentence within the Sentencing Guidelines is reasonable). If the district court chose to vary upward in Mr. Spencer's case, it would have to "consider the extent of the deviation and ensure that the justification [was] sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. And, "[a]fter settling on the appropriate sentence, [the district court would be required to] adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* Due to the erroneous career offender designation, Mr. Spencer was stripped of these meaningful safeguards that, "in practice, make the imposition of a non-Guidelines sentence less likely." *Peugh*, 133 S. Ct. at 2083-84.[4]

---

[4] The cognizability of a career offender error under § 2255 should not depend on whether the sentence was imposed under a mandatory or advisory Sentencing Guidelines regime. Even when the Sentencing Guidelines were mandatory, district courts retained discretion to depart downward along the criminal history axis—under U.S.S.G. § 4A1.3—if they concluded that a career offender designation was over-representative of a defendant's past. *See, e.g.*, *United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir. 1998) ("Consistent with every other circuit to have addressed this issue, we now hold that [U.S.S.G.] § 4A1.3 does authorize the sentencing court to downward depart regardless of a defendant's status as a career offender[.]") (citing cases).

## IV

Compounding its error, the majority puts a further gloss on the § 2255 cognizability standard. It holds that where a federal prisoner, sentenced below the statutory maximum, complains of sentencing error but does not prove either actual innocence of his crime or vacatur of a prior conviction, § 2255 is unavailable. This means that Mr. Spencer and defendants like him, who accept guilt but challenge an illegal sentence, can never use § 2255 to obtain relief.

To reach this result, the majority "woodenly applies" habeas cases (such as *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013), and *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)), which hold only that a showing of actual innocence (a form of "fundamental miscarriage of justice") can overcome a procedural default or a statute of limitations bar. The majority does so "without any regard to the significant differences between [procedural default and time bars on the one hand] and [the cognizability of a preserved claim in a first filed and timely § 2255 motion on the other], and without regard to the import of its decision." *Codispoti v. Pennsylvania*, 418 U.S. 506, 535-36 (1974) (Rehnquist, J., dissenting). The Supreme Court has never so much as hinted, much less held, that a showing of actual innocence, or the vacatur of a prior conviction, is a necessary prerequisite for a properly preserved sentencing claim presented in an initial § 2255 proceeding. And that should not come as a surprise, for if the majority were

correct, *Behrens* (with a defendant who did not challenge his guilt and only sought resentencing relief due to a Rule 32(a) error) could not have come out the way that it did.

Mr. Spencer did not procedurally default his claim of sentencing error, and he did not file his § 2255 motion past the filing deadline. There is no valid reason to saddle Mr. Spencer, who did everything we could ask a defendant to do in terms of preserving a claim, with the burden of proving actual innocence—a safety valve requirement that has been developed for use by those who have forfeited their claims by not presenting them in a timely and proper manner. Even the United States has not asked for the imposition of such a burden.

## V

I close with a suggestion that the Supreme Court address the § 2255 cognizability issue and some thoughts about the choice between finality and justice.

## A

We decide today's case by a 5-4 vote. Some of our sister circuits, as explained below, have issued closely divided decisions on the same or similar issue.

Four years ago, a unanimous panel of the Eighth Circuit held that a career offender designation, shown to be incorrect due to intervening Supreme Court precedent, can be challenged under § 2255. *See Sun Bear v. United States*, 611 F.3d 925, 929-31 (8th Cir. 2010). The full Eighth Circuit, in a 6-5 decision, reversed course and ruled that a career offender error is not cognizable under § 2255. *See Sun Bear v. United States*, 644 F.3d 700, 704-06 (8th Cir. 2011) (*en banc*).

In 2011, a panel of the Seventh Circuit, without dissent, held that an erroneous career offender error is cognizable under § 2255 if the Sentencing Guidelines were mandatory at the time of the error. Two years later, a divided panel of the Seventh Circuit ruled that such error is not cognizable if the Guidelines were merely advisory. *Compare Narvaez v. United States*, 674 F.3d 621, 627-30 (7th Cir. 2011) (3-0 decision), *with Hawkins v. United States*, 706 F.3d 820, 823-25 (7th Cir. 2013) (2-1 decision), *as supplemented on denial of rehearing en banc,* 724 F.3d 915 (7th Cir. 2013).

More recently, a divided panel of the Fourth Circuit, agreeing with the panel's decision in this case, held that the incorrect designation of a defendant as a career offender is the type of error that is cognizable under § 2255. *See Whiteside v. United States*, 748 F.3d 541, 548-55 (4th Cir. 2014) (2-1 decision). The full Fourth Circuit, however, vacated that decision and agreed to hear the case *en banc*.

69

*See Whiteside v. United States*, ___ F.3d ___, 2014 WL 3377981 (4th Cir. 2014) (*en banc*).

In my opinion, it is time for the Supreme Court to address the important § 2255 cognizability question, one which the First Circuit has called "longstanding" and "interesting." *Damon v. United States*, 732 F.3d 1, 3, 4 (1st Cir. 2013). Much has changed since the Supreme Court first held that claims alleging a violation of the "laws of the United States" are only cognizable on collateral attack if the asserted violation also constitutes a fundamental defect that results in a complete miscarriage of justice. Given the "Court's historic willingness to overturn or modify its earlier views of the scope of the writ, even where the statutory language authorizing judicial action has remained unchanged," *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977), the Court may wish to reconsider the standard announced in cases like *Hill* to give effect to the plain text of § 2255.

In light of the historic uses of the writ of habeas corpus, to some the language of § 2255 may seem too broad. "Yet this defect—if defect it is—is inherent in the statute as written, and its correction must lie with Congress." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). *See also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.") (internal quotation marks omitted). As the

70

Supreme Court has told us repeatedly, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted).

**B**

Federal courts, entrusted with the administration of criminal law and procedure, are often faced with a difficult judgment call: choosing between finality and justice. In the words of the Eighth Circuit, "[f]or matters not settled it must be recognized that any decision which allows or refuses collateral attack rests upon a choice between achieving finality and assuring substantial justice[.]" *Houser v. United States*, 508 F.2d 509, 513 (8th Cir. 1974). Admittedly, finality is often the easier value to quantify, as it is viewed in terms of efficiency. Justice, given its focus on notions of fairness, is usually perceived as more difficult to define. That does not mean, however, that we should prefer the former over the latter in the case before us today. *See, e.g.*, Russell, *Reluctance to Resentence*, 91 N. C. L. Rev. at 139 ("A close examination of the arguments favoring finality reveals that there is considerably less justification for treating sentences as final compared to convictions. Courts have been overstating the interests in finality of sentences, and they should be fixing more sentencing mistakes.").

The majority asserts that its decision promotes finality in the criminal justice system, and I do not doubt that it does. But finality is not "the central concern of the writ of habeas corpus"—"fundamental fairness is." *Strickland v. Washington,* 466 U.S. 668, 697 (1984). My vote here is for justice generally, and for fairness to Mr. Spencer specifically. Refusing to correct a sentencing error that has resulted in an extra 81 months of prison time ignores that § 2255, like the correlative writ of habeas corpus, "is, at its core[,] an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995).

ROSENBAUM, Circuit Judge, joined by WILSON, MARTIN, and JORDAN, Circuit Judges, dissenting:

Today the Court holds that Sentencing Guidelines error that does not cause the imposition of a sentence greater than the statutory maximum can never be cognizable under § 2255 unless a prior conviction on which an enhancement is based is vacated or the petitioner is actually innocent of the crime for which he was sentenced. The reason for this, the Court explains, is that all sentences based on errors under the Sentencing Guidelines but still lower than the statutory maximum are necessarily "lawful," and "lawful" sentences are not cognizable under § 2255. But the notion that "lawful" sentences cannot be challenged on a § 2255 petition is not supported by *United States v. Addonizio*, 442 U.S. 178, 99 S. Ct. 2235 (1979), the case on which the Court relies for the proposition, and is undermined by the statute's own text.

Moreover, *Johnson v. United States*, 544 U.S. 295, 125 S. Ct. 1571 (2005)— a case where the Supreme Court implicitly recognized the cognizability under § 2255 of challenges to "lawful" sentences arising out of enhancements based on legal nullities—requires us to grant Spencer's petition and remand his case for resentencing. Nor can the Court's reasoning for why *Johnson* does not control the outcome in this case withstand scrutiny. Because I believe that *Johnson* alone

73

requires the granting of Spencer's petition and the remand of this case, I write separately.

## I.    *Addonizio* does not hold that "lawful" sentences can never constitute a fundamental defect that results in a complete miscarriage of justice under § 2255.

Congress has set forth five categories of cognizable § 2255 claims:  those where (1) "the sentence was imposed in violation of the Constitution or [(2)] laws of the United States, . . . [(3)] the court was without jurisdiction to impose such a sentence, . . . [(4)] the sentence was in excess of the maximum authorized by law, or [(5)] [the sentence] is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Today the Majority holds that, unless a prisoner proves actual innocence or, after being sentenced, obtains vacatur of a predicate felony used to enhance his guidelines range, claims alleging only Sentencing Guidelines error can never be cognizable if the resulting sentence is "lawful," a term that the Court apparently defines as a sentence below the statutory maximum.  *See supra* at 10.  Necessarily, then, the Majority also must have concluded that "lawful" sentences that do not meet the two narrow exceptions and that nevertheless erroneously apply the Sentencing Guidelines can never fall within any of the five categories explicitly authorized by the statute.

The Court takes the  term "lawful" from *United States v. Addonizio*, 442 U.S. 178, 99 S. Ct. 2235 (1979), which it suggests stands for the proposition that

74

"lawful" sentences do not result in a complete miscarriage of justice. *See supra* at 14 (citing *Addonizio*, 442 U.S. at 186–87, 99 S. Ct. at 2241, for support for the proposition that "[w]e lack the authority to provide Spencer relief. Even if he is not a career offender, his sentence is lawful."); *see also id.* at 10-11.

I respectfully disagree that *Addonizio* holds or otherwise requires the conclusion that so-called "lawful" sentences necessarily do not result in a "complete miscarriage of justice" and that they can never be cognizable on a § 2255 petition. Instead, *Addonizio* holds only that a lawful sentence that is imposed because of a judge's incorrect subjective expectation of the actual amount of time that a defendant will serve in prison under the judge's sentence—and *only* from a sentencing judge's frustrated subjective intent—does not result in a complete miscarriage of justice and is not cognizable under § 2255.

In *Addonizio*, the district judge sentenced Addonizio to ten years' imprisonment with the expectation that Addonizio would be eligible for parole after he had served a third of his sentence. 442 U.S. at 180–81, 99 S. Ct. at 2238. Not long after Addonizio was sentenced, however, the Parole Commission significantly changed its policies, and based on the new policies, twice refused Addonizio parole. *Id.* at 182, 99 S. Ct. at 2238–39. Addonizio then filed a petition under § 2255 to challenge his sentence. *Id.* at 183, 99 S. Ct. at 2239.

75

The Supreme Court determined that Addonizio's claim was not cognizable under § 2255 because "there is no basis for enlarging the grounds for collateral attack to include claims ***based not on any objectively ascertainable error*** but on the frustration of the subjective intent of the sentencing judge." *Id.* at 187, 99 S. Ct. at 2241 (emphasis added). In reaching this conclusion, the Supreme Court emphasized the practical difficulties of allowing the alleged frustration of the subjective expectations of the sentencing judge to govern the cognizability of a claim under § 2255:

> As a practical matter, the subjective intent of the sentencing judge would provide a questionable basis for testing the validity of his judgment. The record made when Judge Barlow pronounced sentence against Addonizio, for example, is entirely consistent with the view that the judge then thought that this was an exceptional case in which the severity of Addonizio's offense should and would be considered carefully by the Parole Commission when Addonizio became eligible for parole. If the record is ambiguous, and if a § 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing. Regular attempts to do so may well increase the risk of inconsistent treatment of defendants; on the other hand, the implementation of the Parole Commission's policies may reduce that risk.

*Id.* at 187–88, 99 S. Ct. at 2242. Thus, *Addonizio*'s holding is grounded in significant part on the Supreme Court's distinction between "objectively

76

ascertainable error" and "the frustration of the subjective intent of the sentencing judge."[1]

It is true, as the Court suggests, *see supra* at 10, that in *Addonizio*, the Supreme Court stated, "According to all of the objective criteria—federal jurisdiction, the Constitution, and federal law—the sentence was and is a lawful one." *Addonizio*, 442 U.S. at 187, 99 S. Ct. at 2241. But that sentence cannot be read in isolation. In context, the statement takes on its intended meaning:

> According to all of the objective criteria—federal jurisdiction, the Constitution, and federal law—the sentence was and is a lawful one. And in our judgment, there is no basis for enlarging the grounds for collateral attack ***to include claims based not on any objectively ascertainable error*** but on the frustration of the subjective intent of the sentencing judge.

*Id.* (Emphasis added).

The first quoted sentence refers to the specifically identified categories of matters cognizable under the express language of § 2255—sentences where the court lacked jurisdiction, violated the Constitution, or transgressed federal law— thus making the sentences "unlawful." Under § 2255, however, a sentence may be vacated not only if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such

---

[1] The remainder of the holding in *Addonizio* is based on the statutory scheme as it related at that time to the duties of the Parole Commission, and it is not relevant to Spencer's case. *See id.* at 188–89, 99 S. Ct. at 2242–43.

sentence, or . . . the sentence was in excess of the maximum authorized by law . . . ," but also if the sentence "is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255(a).

The first quoted sentence, therefore, does no more than state that Addonizio's sentence was a "lawful" one by definition because it did not fall into any of the expressly named categories.  It does not in any way suggest that all "lawful" sentences—which, under *Addonizio*, appear to be all sentences that do not fall into one of the first four categories expressly enumerated under § 2255—can never be cognizable under § 2255.  If it did, it would necessarily cause the phrase "otherwise subject to collateral attack," which appears in § 2255, to be meaningless, violating the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative . . . ." *Mountain States Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S. Ct. 2587, 2594 (1985) (citation and internal quotation marks omitted).

Significantly, the second quoted sentence begins by design with the conjunction "[a]nd," clearly signaling that the thought contained within it is part and parcel of the thought set forth in the sentence preceding it.  *See Addonizio*, 442 U.S. at 187, 99 S. Ct. at 2241.  And it explains that a lawful sentence challenged on a subjective basis only—not on an objectively ascertainable standard such as is at issue in Spencer's case—does not qualify as "otherwise subject to collateral

78

attack" under § 2255. The second sentence—and, in particular, both sentences read together, as they were written—says only that. Entirely absent from the quoted sentences, as it must be to avoid neutering a part of § 2255, is any suggestion that a "lawful" sentence can never qualify as "otherwise subject to collateral attack" under § 2255. Indeed, in light of the four other enumerated categories, the "otherwise subject to collateral attack" category is necessary only to the extent that Congress intended to provide prisoners with otherwise "lawful" sentences an opportunity to attack them.

**II.   The Supreme Court's decision in *Johnson*, which implicitly found that an otherwise "lawful" sentence that was enhanced based on a legal nullity was cognizable under § 2255, controls the outcome of Spencer's case and requires granting Spencer's petition and remanding for resentencing.**

**A.   Necessarily, *Johnson* implicitly holds that an otherwise "lawful" sentence that was enhanced based on a legal nullity is cognizable under the "otherwise subject to collateral attack" category of § 2255 because it is a "fundamental defect that results in a complete miscarriage of justice."**

In *Johnson*, Johnson was sentenced as a career offender under § 4B1.1 of the Sentencing Guidelines. 544 U.S. at 298, 125 S. Ct. at 1575. On appeal, we affirmed the sentence. *Id.* at 299, 125 S. Ct. at 1575 (citing *United States v. Johnson*, No. 94-9402 (Dec. 22, 1995) (*per curiam*)).

More than two years after we issued our opinion in Johnson's direct appeal, Johnson sought in state court to have a guilty plea in one of his predicate offenses

79

invalidated "because he had not knowingly, intelligently, and voluntarily waived his right to counsel." *Id.* at 300, 125 S. Ct. at 1576. Although the state denied Johnson's contentions, it did not file hearing transcripts. *Id.* at 301, 125 S. Ct. at 1576. Based on the only records that were in fact filed, the state court concluded that the state "did not show an affirmative waiver of [Johnson's] right to an attorney," so it vacated the predicate conviction. *Id.* (alteration in original) (internal quotation marks omitted).

About three months later, Johnson filed a petition under § 2255 seeking to vacate his federal sentence based on the state's vacatur of one of the predicate offenses used to establish career-offender status. *Id.* The district court denied the motion as untimely, and once again, we affirmed. *Id.* at 301, 125 S. Ct. at 1577.

The Supreme Court granted *certiorari* "to resolve a disagreement among the Courts of Appeals as to whether vacatur of a prior state conviction used to enhance a federal sentence [is a matter of fact for purposes of [determining under § 2255(f)(4)] "the date on which the facts supporting the [§ 2255] claim or claims presented could have been discovered through the exercise of due diligence"]," and, if so, when the one-year limitation period begins to run where vacatur of a predicate offense occurs. *Id.* at 302, 125 S. Ct. at 1577. Although the Court decided that vacatur of an underlying conviction does qualify as a "fact" for purposes of triggering the start of the one-year statutory period under § 2255(f)(4),

80

it nonetheless affirmed our decision denying Johnson's petition because it found that Johnson had failed to demonstrate due diligence in seeking the order of vacatur. *Id.*

The *Johnson* dissent took issue only with the Court's determination of when the one-year limitation period should begin when vacatur of a predicate offense occurs. *See id.* at 312−19, 125 S. Ct. at 1582–87 (Kennedy, J., dissenting).

Neither the Supreme Court's opinion nor the dissent in *Johnson* suggests that Johnson's claim of objectively discernible Sentencing Guidelines error based on alleged erroneous application of the career-offender guideline is not cognizable under § 2255. To the contrary, both opinions strongly imply⸺indeed, necessarily implicitly find⸺that it is.[2]  Moreover, this Court agrees that *Johnson* stands for

---

[2] First and perhaps most significantly, if Johnson's claim of Sentencing Guidelines error were not cognizable on a § 2255 petition, the entirety of both the Court's opinion and the dissent would be *dicta*. This is necessarily the case because it would never be necessary to determine at what point the one-year statute of limitations begins to run under § 2255 when a predicate offense supporting a career-offender enhancement is vacated if a challenge to the application of career-offender status under the Sentencing Guidelines were not cognizable on a § 2255 petition in the first place. That is, the question of timeliness could never be reached because all § 2255 petitions challenging career-offender status following vacatur of a qualifying predicate conviction would have to be denied as not cognizable.

Second, while neither opinion in *Johnson* explicitly states that Sentencing Guidelines career-offender error is cognizable under § 2255, both opinions make statements that are inconsistent with the conclusion that it is not. For example, the Supreme Court notes, "Our cases applying [mandatory enhancements under the Sentencing Guidelines and the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"),] assume . . . that a defendant given a sentence enhanced for a prior conviction is *entitled* to a reduction if the earlier conviction is vacated." *Id.* at 302−03, 125 S. Ct. at 1577 (emphasis added) (citations omitted). It further explains that "a defendant who successfully attacked his state conviction in state court or on federal habeas review could then 'apply for reopening of *any* federal sentence enhanced by the state sentences.'" *Id.* at 303, 125 S. Ct. at 1578 (emphasis added) (citations omitted).

the proposition that "[a] prisoner might . . . collaterally attack a sentence enhanced by a prior conviction if that prior conviction has since been vacated[]," and that such a petition raises "sentencing error[]" as its basis. *See supra* at 11 ("But the Supreme Court has rejected collateral attacks of *other sentencing errors* . . . .) (emphasis added).

So, although Johnson's original sentence was necessarily "lawful" under the Majority's reasoning, the Supreme Court nonetheless found Johnson's claim cognizable under § 2255. It could have done so only if Johnson's sentence was "otherwise subject to collateral attack" under § 2255.

This is necessarily so since Johnson's sentence was not cognizable under any of the four other categories set forth in § 2255. That is, Johnson's sentence did not violate the Constitution, was not imposed by a court that lacked jurisdiction, and was not in excess of the statutory maximum; nor did the sentence violate the "laws of the United States" since, according to today's Majority, the Sentencing Guidelines, even when mandatory, are not "laws of the United States." *See supra* at 18 ("[A]ll of the guidelines are the result of a congressional directive—the

---

And the *Johnson* dissent states that *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732 (1994), and *Daniels v. United States*, 532 U.S. 374, 121 S. Ct. 1578 (2001), "suggest that the proper procedure for reducing a federal sentence enhanced on the basis of an invalid state conviction is to seek a vacatur of a state conviction, and then proceed through federal habeas." *Id.* at 313, 125 S. Ct. at 1583 (Kennedy, J., dissenting). While it is true that *Custis* and *Daniels* both involved sentences enhanced under the ACCA, the *Johnson* dissent apparently saw no basis for distinguishing Johnson's enhancement under the career-offender provision of the Sentencing Guidelines from those of Custis and Daniels under the ACCA.

Sentencing Reform Act of 1984—but none is tantamount to the laws of Congress"). Although I need not opine here on whether the Sentencing Guidelines are or ever were "laws of the United States" for § 2255 purposes, the fact that the Majority takes this position necessarily means that, under the Majority's reasoning, Johnson's sentence was "lawful." Therefore, Johnson's claim could have been cognizable only under the "otherwise subject to collateral attack" portion of § 2255. The circumstance that made Johnson's sentence "otherwise subject to collateral attack" and allowed Johnson to breach the § 2255 barrier in spite of his "lawful" sentence was the fact that the predicate felony on which his enhanced sentence had been based had been vacated—that is, it was a legal nullity at the time of Johnson's § 2255 petition.

In short, Supreme Court precedent renders a challenge to the application of the career-offender guideline cognizable under § 2255 when one of the underlying predicate convictions on which it is based is effectively a nullity and that circumstance is timely identified. That is precisely the situation that exists in this case.

**B. Spencer's enhanced sentence is based on a legal nullity like Johnson's was, so it qualifies under *Johnson* as "a complete miscarriage of justice" and is cognizable as "otherwise subject to collateral attack" under § 2255 to the same extent as Johnson's sentence was in *Johnson*.**

Turning to the record before us, it is clear that, as in *Johnson*, one of the predicate felonies upon which Spencer's career-offender status was based is effectively a legal nullity. Consequently, Spencer has a cognizable claim under § 2255.

Section 4B1.2(a) of the United States Sentencing Guidelines Manual ("U.S.S.G") defines "crime of violence" in part as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that— . . . (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." In this case, the district court concluded that third-degree felony child abuse "equate[s] with a crime of violence," or, in other words, that it qualifies as a "crime of violence" under the residual clause of Section 4B1.2(a)(2). This clause provides that the crime must "otherwise involve[] conduct that presents a serious potential risk of *physical* injury to another." U.S.S.G. § 4B1.2(a)(2) (emphasis added). The district court reasoned that "any conviction of Florida Statute 827.03, a third-degree felony, has the underlying elements of a crime of violence."

But, under Florida law, the state may prove third-degree felony child abuse in two different ways. In particular, and as relevant here, Florida law makes it a third-degree felony for any person to "knowingly or willfully [engage in "[a]n intentional act that could reasonably be expected to result in physical *or* mental

84

injury to a child"] without causing great bodily harm, permanent disability, or permanent disfigurement to the child." Fla. Stat. §§ 827.03(2)(c), 827.03(a)(b)(2) (emphasis added). Therefore, a person may be convicted of this crime if he performs an act that could reasonably be expected to result in only mental injury or if he does something that could reasonably be expected to result in only physical injury or, finally, if he commits an act that could reasonably be expected to result in both physical and mental injury.

Obviously, and by definition, if a person is convicted of engaging in an act that could reasonably be expected to result in mental injury only, that is not a crime that "involves conduct that presents a serious potential risk of *physical* injury to another" under § 4B1.2(a)(2) (emphasis added). As a result, it cannot qualify as a predicate offense under the career-offender guideline. On the other hand, if a person is convicted of acting in a way that could reasonably be expected to result in either physical injury only or in both mental and physical injury, that person necessarily engages in "conduct that presents a serious potential risk of physical injury to another" under § 4B1.2(a)(2). Because one version of third-degree felony child abuse qualifies as a "crime of violence" and another does not, it was incumbent on the district court to determine to which version of the statute Spencer pled guilty. *See Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265,

1273 (2010)[3] (citing *Nijhawan v. Holder*, 577 U.S. 29, 40–41, 129 S. Ct. 2294, 2302 (2009); *Chambers v. United* States, 555 U.S. 122, 126–27, 129 S. Ct. 687, 691 (2009); *Shepard*, 544 U.S. 13, 26, 125 S. Ct. 1254 (2005) (plurality opinion); *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143 (1990)).

This the district court never did. Instead, the court apparently did not recognize that more than one version of § 827.03 exists, so it did not ascertain to which version of third-degree felony child abuse Spencer had pled guilty. The judge simply concluded, "I think [Spencer's prior conviction] comes within [Fla. Stat. §] 827.03(b), an intentional act that could reasonably be expected to result in physical *or* mental injury to a child." (Emphasis added).

It is nonetheless clear in looking at the sentencing record before the district court that no sufficient basis existed to conclude that Spencer pled guilty to the version of third-degree felony child abuse that requires an act that could reasonably

---

[3] No retroactivity concern arises because, as *Johnson*'s citation to *Shepard* and *Taylor* demonstrates, Supreme Court decisions predating Spencer's sentencing necessarily required this procedure. *See United States v. Mathews*, 453 F.3d 830, 834 (7th Cir. 2006) (observing that *Shepard*, 544 U.S. at 17, 125 S. Ct. 1254, and *Taylor*, 495 U.S. at 599–600, 110 S. Ct. 2143, "establish that, for state statutes that are 'divisible[,]' . . . a sentencing court may examine [*Shepard* materials] in order to determine which portion of the state statute the defendant violated"); *see also Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2283 (2013) ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); *id.* at 2285 ("Applied in that way—which is the only way we have ever allowed— the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute."). *Taylor* was expressly referenced during Spencer's sentencing hearing, and Spencer urged the district court to apply the *Shepard* procedure, albeit not by name but by description, to assess whether Spencer had pled guilty to the "violent or nonviolent aspect of the statute."

86

be expected to result in physical injury.  In *Shepard*, 544 U.S. at 16, 125 S. Ct. at 1257, the Supreme Court explained that a sentencing court generally may consider only "the statutory definition [of the crime], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" (i.e., the "*Shepard* documents") when determining to what crime a defendant previously pled guilty for purposes of assessing whether the crime qualifies as a "violent felony" under the ACCA.

The reason for this limitation is simple:  the Sixth and Fourteenth Amendments guarantee that, with the exception of the existence of a prior felony conviction, any findings of fact that will be used to increase a statutory mandatory minimum or maximum term of imprisonment——such as a determination that a person has sufficient predicate offenses under the ACCA——must be submitted to and found by a jury beyond a reasonable doubt.  *Id.* at 25, 125 S. Ct. at 1262 (plurality opinion); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2262–63 (2000); *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 2155 (2013).  Going beyond the *Shepard* documents would generally require a sentencing judge to "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea . . . ," *Shepard*, 544 U.S. at 25, 125 S. Ct. at 1262 (plurality opinion), a practice that would violate the constitutional prohibition against allowing facts not submitted to

a jury and proven beyond a reasonable doubt to increase the mandatory minimum and statutory maximum. Therefore, the Supreme Court has further explained, "[W]hen a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment." *Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2288 (citing *Shepard*, 544 U.S. at 24−26, 125 S. Ct. 1254 (plurality opinion)). As a result, it is not constitutionally permissible in considering whether a defendant qualifies for sentencing enhancement under the ACCA for a sentencing judge to make any factual findings about the conviction that the defendant did not knowingly, voluntarily, and intelligently waive his right to submit to a jury to be proven beyond a reasonable doubt.

It is true that Spencer's sentence was enhanced under the career-offender guideline, not the ACCA, and the same Sixth Amendment concerns do not exist with respect to the guideline because application of the career-offender enhancement cannot increase a mandatory minimum or statutory maximum term of imprisonment.[4] But we have previously concluded that our determinations about whether a conviction constitutes a "violent felony" under the ACCA apply to the

---

[4] If application of the career-offender enhancement caused the Guidelines range to exceed the statutory maximum, the statutory maximum of the offense for which the defendant is sentenced would become the Guidelines sentence. U.S.S.G. § 5G1.1(a).

88

analysis of whether an offense qualifies as a "crime of violence" under the Sentencing Guidelines.[5]  *United States v. Chitwood*, 676 F.3d 971, 975 n.2 (11th Cir. 2012) (citing *United States v. Archer*, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008)).  And I am aware of no case that has suggested that courts should apply different standards under the career-offender guideline and the ACCA for assessing to what particular predicate crime a defendant pled guilty.  On the contrary, we ourselves have recently applied the *Shepard*-analysis procedures to determine whether a prior conviction under a divisible statute qualified as a predicate crime for purposes of a different guideline enhancement.  *See United States v. Estrella*, 758 F.3d 1239, 1248–54 (11th Cir. 2014) (applying *Shepard*-analysis procedure to case involving enhancement under U.S.S.G. § 2L1.2).  For these reasons,[6] I consider only the *Shepard* documents in identifying the version of third-degree felony child abuse to which Spencer pled guilty.

---

[5] To the limited extent that, with respect to a particular crime, the Commentary to the Guidelines requires a conclusion different from the case law construing the phrase "violent felony" under the ACCA, offenses qualifying as "crimes of violence" under the career-offender guideline may not qualify as "violent felonies" under the ACCA.  *Denson v. United States*, 569 F. App'x 710, 712, No. 14-10211, 2014 WL 2722494, at *2–3 (11th Cir. June 17, 2014) (citing *Hall*, 714 F.3d at 1272 (quoting *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913 (1993)).  Here, though, no commentary to the career-offender guideline affects the issue before the Court.

[6]  In addition, considering the factual circumstances of a conviction for purposes of determining whether to apply the career-offender enhancement would result in "a particular crime . . . sometimes [being] count[ed] towards enhancement and sometimes not, depending on the facts of the case." *Taylor*, 495 U.S. at 601, 110 S. Ct. at 2159 (explaining why courts do not evaluate particular facts of a conviction in determining whether they qualify as predicate felonies under statutory sentencing-enhancement provisions).  Moreover, quite apart from the

The record contains no charging document for the predicate crime to which Spencer pled guilty, and the only *Shepard* document referred to during the sentencing proceeding was the transcript of Spencer's hearing where he pled guilty to Section 827.03(2)(c).  But the entire transcript is not a part of the sentencing record.  Instead, the sole statement from the transcript that appears in the sentencing record is the state-court prosecutor's factual basis for the conviction.  In its entirety, it reads, "As to [Spencer], . . . he did engage in sexual activity with a minor and that action could reasonably cause physical *or* mental injury to that child, contrary to the provisions of 827.03."[7]  (Emphasis added).

This statement sheds no light on to which version of the statute Spencer pled guilty—the version where the act could reasonably cause physical injury, or the version where the act could reasonably cause only mental injury.  While it is true

jurisprudential concerns raised by applying different standards, it would be impractical and "potential[ly] unfair" to require sentencing courts to undertake a factual inquiry into the circumstances of predicate felonies to determine whether the career-offender guideline applies. *See Taylo*r, 495 U.S. at 601–02, 110 S. Ct. at 2159–60 (explaining why courts do not conduct factual inquiries into particular convictions to determine whether they qualify as predicate felonies under statutory sentencing-enhancement provisions).  Sentencing courts would face mini-trials on crimes previously adjudicated before different tribunals every time that the court or the government raised enhancement under a guideline.

[7] No indication exists in the district-court sentencing record that Spencer agreed with this statement during the state-court change-of-plea proceedings, so, on the district-court record, it would be questionable whether the statement even qualified as *Shepard* information.  However, Spencer did attach to his initial appellate brief a copy of the transcript from his change-of-plea hearing in the third-degree felony child abuse case.  In that transcript, Spencer stated that he took "no exceptions" to the prosecutor's factual basis as set forth above.  Although the transcript is outside the record on appeal, in the interests of completeness, I nonetheless note Spencer's lack of exception.

that many types of sexual activity could reasonably cause physical injury to a child, not all sexual activity necessarily could reasonably cause physical injury to a child, particularly because, for purposes of Section 827.03, Fla. Stat. § 827.01(2) defines the term "child" to include anyone up to, though not including, the age of eighteen. So this statement by the prosecutor does not demonstrate that Spencer necessarily must have pled to the physical-injury version of the statute.[8]

Nor does the record contain any indication that Spencer himself understood that he was pleading to the version of the statute requiring that he have knowingly participated in activity with a child that could reasonably cause physical injury. In fact, during the sentencing hearing, Spencer argued that he had not pled guilty to the physical-injury version of the statute before the state court. Based on the record, it cannot be said that when Spencer pled guilty to violating Fla. Stat. § 827.03, Spencer knowingly, voluntarily, and intelligently gave up his Sixth

---

[8] In support of his § 2255 petition, Spencer filed an affidavit from the person with whom he engaged in sexual activity, written by her after she attained the age of majority. In that affidavit, she attested under oath that she had called Spencer, who himself was eighteen years old at the time, and asked him to visit her at her residence. When he arrived, she stated, she "provoked sexual intercourse with Spencer, which was consensual between the both of us." She further attested that "[a]t all times prior to this night, I misrepresented to Spencer that I was eighteen . . . years old. I did not want Spencer to know that I was fourteen . . . because I felt my age would scare him off. . . . Spencer did not abuse me, intimidate me, coerce me, nor sexually assault me. Unfortunately, I coerced him." While laws criminalizing sexual activity between an adult and a minor, regardless of the adult's alleged lack of knowledge of the minor's age, certainly exist for good reason, the facts as alleged in this affidavit explain how Spencer reasonably viewed himself as not pleading guilty to the physical-injury version of the statute. I do not consider this affidavit in my analysis because it was not part of the *Shepard* documents. Instead, I note it only as an example of how not every incident of "sexual activity with a minor" would reasonably cause physical injury.

Amendment right to have submitted to a jury and proven beyond a reasonable doubt the element of the qualifying version of the statute that he engaged in activity that could reasonably cause physical injury to a child.  As a result, Spencer's conviction for third-degree felony child abuse cannot be viewed as a conviction for the physical-injury version of the statute.  Even the Government concedes this point.  Quite simply, Spencer's conviction for third-degree felony child abuse never qualified as a "crime of violence" at any point.

This situation differs from when a court mistakenly concludes that a particular crime or version of a crime constitutes a "crime of violence," but later Supreme Court jurisprudence makes clear that that same crime, in fact, is not a crime of violence.  *See, e.g.*, *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008).  We have previously described a petitioner in such a case as being "legally innocent" of the predicate crime of conviction.  *See McKay v. United* States, 657 F.3d 1190, 1199 (11th Cir. 2011).  In those circumstances, identifying the particular crime that the petitioner was convicted of is not the question; that is beyond dispute throughout all stages of the legal proceedings.  Instead, the only question concerns whether the particular crime at issue is properly classified as a "crime of violence."

Here, however, the opposite situation exists:  we know and have always known that the mental-injury version of the statute is not a "crime of violence,"

92

and we know and have always known that the physical-injury version of the statute is.  But the sentencing court did not identify which version of the crime was the subject of Spencer's conviction.  Had it done so, it would have determined that no *Shepard* information shows that Spencer knowingly, voluntarily, and intelligently waived his Sixth Amendment right to have the physical-injury version of the statute submitted to a jury and proven beyond a reasonable doubt.  So the sentencing court could not properly have relied on a conviction of the physical-injury version of the statute in determining whether Spencer qualified as a career offender.  Put simply, in Spencer's case, no amount of clarification by the Supreme Court of the phrase "crime of violence" could affect whether Spencer's predicate conviction was a conviction for a crime of violence; that is, the record lacks evidence that Spencer ever pled guilty to the physical-injury version of the statute which is the only version of the statute that could ever have been viewed as a crime of violence.  For this reason, a conviction for the only version of third-degree felony child abuse that qualifies as a crime of violence—the physical-injury version—never occurred in the first place.  In other words, it is effectively a legal nullity.

For purposes of cognizability under § 2255, to the extent that it is any different for the sentencing court to have relied on Spencer's non-existent conviction for the physical-injury version of third-degree felony child abuse in

affirming his career-offender status than it is for a sentencing court to base career-offender status on a subsequently vacated conviction as in *Johnson*, Spencer's case presents even more of a problem if left unaddressed. Unlike Johnson, who was at least convicted of the predicate offense at some point, Spencer never was. Because Spencer's alleged predicate conviction, like Johnson's vacated predicate conviction, is effectively a legal nullity, Spencer's § 2255 petition is cognizable to the same extent as was Johnson's.

C. **The Majority's reasoning for why *Johnson* does not require us to grant Spencer's petition and remand for resentencing does not withstand scrutiny.**

The Majority, though, resists this natural conclusion, offering three reasons. First, the Majority explains, "Spencer's prior conviction has not been vacated, and that distinction matters. When a conviction is *vacated*, that vacatur constitutes a 'new "fact"' with which the petitioner can challenge his sentence." *Supra* at 22 (citing *United States v. Stewart*, 646 F.3d 856, 858 (11th Cir. 2011) (emphasis in original)). Second, the Majority posits, "Even if we were to agree with Spencer that he is 'innocent' as a career offender, that *legal* innocence falls far short of *factual* innocence, the kind of innocence involved in *Johnson* . . . ." *See id.* at 20 (emphasis in original). And third, the Majority suggests that Spencer is not entitled to application of the same § 2255 cognizability rule as Johnson because, supposedly unlike with Johnson, "[i]f the district court were to resentence Spencer,

94

the district court could impose the same sentence again." *See id.* at 14-15. None of these reasons can withstand scrutiny.

**1.**

The Majority is correct in recognizing that "[w]hen a conviction is vacated, that vacatur constitutes a "new 'fact'" with which the petitioner can challenge his sentence." *Supra* at 22 (emphasis omitted). But this legal truth is irrelevant to the issue of cognizability under § 2255. Instead, it relates only to the separate and independent issue of whether a § 2255 application has been timely filed within the statute of limitations—a requirement that is not at issue here because it is beyond all doubt that Spencer timely filed his § 2255 application.

In *Stewart*, the case that the Majority quotes and relies upon in trying to distinguish the vacatur of a predicate conviction from the reliance from the outset on a nonexistent conviction, we explained that "the state court vacatur of a predicate conviction is a new 'fact' that triggers a fresh one-year statute of limitations under § 2255(f)(4),[] so long as the petitioner exercised due diligence in seeking that order." Section 2255(f), however, is the statute-of-limitations provision in § 2255; it has nothing to do with cognizability under § 2255, which is governed by § 2255(a). Section 2255(f), provides, in relevant part,

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)     the date on which the judgment of conviction becomes final;

. . .

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Stewart's claim was timely under § 2255(f)(4) of the statute of limitations and Johnson's was not because Stewart filed his § 2255 petition within one year of the vacatur of his underlying predicate conviction, which, in turn, Stewart pursued with due diligence, while Johnson did not.  Spencer, however, does not need to rely on § 2255(f)(4) of the statute of limitations because his claim is timely under § 2255(f)(1), since he filed his § 2255 petition within one year of the date on which the judgment of his conviction became final.  Thus, Spencer and Stewart each complied with the statute of limitations applicable to his claim, so each filed a timely petition, and, provided that each man satisfied the separate cognizability requirement under §2255(a)—which, for the reasons discussed elsewhere in this dissent, Spencer did—Spencer's and Stewart's petitions were equally reviewable under § 2255(f), regardless of whether Spencer's case involved a new "fact" for purposes of § 2255(f)(4).

Johnson, on the other hand, did not file a timely petition because he did not file his petition within one year of when, with due diligence, he could have

96

obtained vacatur of his predicate conviction.  Perhaps ironically, that makes Spencer's claim more appropriate for review under § 2255 than Johnson's, which the Supreme Court implicitly found cognizable (though not timely).  In any case, the mere fact that Johnson's and Stewart's claims sought to satisfy the statute of limitations set forth at § 2255(f)(4) while Spencer met the statute of limitations set forth at § 2255(f)(1) does not somehow make Spencer's cognizable claim not cognizable.  Section 2255(f) has nothing to do with cognizability.

## 2.

Second, the Majority confuses the concepts of "actual innocence," "factual innocence," and "legal innocence."  In this regard, the Majority notes, "Actual innocence means *factual* innocence, not mere legal insufficiency." *Supra* at 22 (emphasis in original) (quoting *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011)).  As the Supreme Court has explained, "actual innocence" means that the petitioner is actually innocent of the crime of conviction.  *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12 (1998).  That is, as a matter of fact, he did not commit the crime of conviction.  *See id.*  Therefore, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623, 118 S. Ct. at 1611 (citations and internal quotation marks omitted).

This standard, of course, does not describe Johnson's situation. Johnson's predicate conviction was set aside only because, years after his conviction, the state could not locate the hearing transcripts that showed that he had waived the right to counsel, not because Johnson presented evidence showing that he had not committed the crime.

The term "actual innocence" has also been used in the context of death-penalty sentences. In *Sawyer v. Whitley*, 505 U.S. 333, 112 S. Ct. 2514 (1992), the Supreme Court considered whether a petitioner could be "actually innocent" of the death penalty. To be "actually innocent" of a death-penalty sentence, a petitioner must present evidence showing "a fair probability that a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts that are prerequisites under state or federal law for the imposition of the death penalty." *Id.* at 346, 112 S. Ct. at 2523 (citation and internal quotation marks omitted).

If the Majority is not suggesting that Johnson was "actually innocent" of his vacated predicate crime, which it cannot be since he wasn't, it appears that the Majority may be attempting to apply the concept of actual innocence of a death-penalty sentence (as opposed to actual innocence of the crime of conviction underlying the death-penalty sentence) to the non-death-penalty sentencing realm. The Majority, then, appears to be suggesting that Johnson was "actually innocent"

of the career-offender enhancement because, as a matter of fact, the underlying predicate conviction no longer existed.

In *McKay*, we declined to determine whether the concept of actual innocence of a sentence can apply outside the death-penalty context.[9]  Instead, we concluded that we did not need to reach that issue.  657 F.3d at 1199.  As we explained, even though one of the predicate crimes on which McKay's career-offender enhancement depended had been reclassified as not qualifying as a predicate "crime of violence" after McKay's sentencing, McKay could not show "actual innocence" in the sentencing context since McKay's conviction for the predicate crime still remained.  *Id.*  In other words, he was only "legally innocent" of the predicate crime, not actually innocent.  *Id.*

Since Johnson was not actually innocent of the predicate crime itself, today the Court appears necessarily to implicitly reach the conclusion that Johnson's claim was cognizable under §2255 because he was actually innocent of the career-offender sentence since the underlying predicate conviction had ceased to exist.  Like Johnson after his predicate conviction was vacated, Spencer lacks the second predicate conviction on which his sentence was based.  But unlike Johnson, whose conviction existed at the time of sentencing, Spencer never had a conviction for a

---

[9] Although *McKay* was issued six years after *Johnson*, we further concluded that the Supreme Court had not so held, either.  *See McKay*, 657 F.3d at 1197 ("Neither the Supreme Court nor this Court has yet ruled on whether *Sawyer*'s actual innocence of sentence exception extends to the noncapital sentencing context.").

second predicate crime that ever qualified as such.  That renders Spencer at least as "actually innocent" of the predicate crime as Johnson was of his when the Supreme court implicitly found his claim to be cognizable under § 2255.[10]  Nor is this a situation where Spencer could be fairly described as being only "legally innocent" since Spencer was never convicted of the only version of third-degree felony child abuse that ever qualified as a "crime of violence."

But, unlike Johnson, Spencer timely filed his § 2255 petition and raised this issue at both his sentencing and on direct appeal.  Therefore, under *Johnson*'s reasoning, Spencer is entitled to have his § 2255 petition granted.

### 3.

The Majority's third reason for not applying *Johnson* appears to be its suggestion that, supposedly unlike with Johnson, a "resentencing court could reimpose the same sentence . . ." on Spencer.  *See supra* at 22; *see also id.* at 14-15 ("If the district court were to resentence Spencer, the district court could impose the same sentence again.").  But the fact that a sentencing court could reimpose the same sentence on Spencer does not in any way distinguish Spencer's situation from Johnson's.

---

[10]  Indeed, requiring Spencer to serve a career-offender sentence based on a conviction for the mental-injury version of the Florida statute is no different from requiring a defendant to serve a career-offender sentence based on a prior conviction for failing to file his taxes.  Neither the mental-injury version of the statute nor the tax crime has ever qualified as a "crime of violence" for purposes of the career-offender enhancement, and the hypothetical defendant and Spencer are both actually innocent of career-offender status.

Although Spencer was sentenced under the advisory guidelines and Johnson under the mandatory guidelines, a resentencing court still could have reimposed the same sentence that Johnson initially received through the use of departures, which might have been especially relevant in Johnson's mandatory-guidelines case since Johnson had obtained vacatur of **_seven_** prior convictions over a ten-year period where he had previously pled guilty but the state was unable to produce transcripts showing that Johnson had knowingly and intelligently waived his right to counsel—that is, the state court entered vacatur in all seven prior felony cases for reasons of legal insufficiency, not actual innocence. *See Johnson*, 544 U.S. at 300–01, 125 S. Ct. at 1576.

Under the mandatory guidelines framework, § 5H1.8, p.s.,[11] provided, "A defendant's criminal history is relevant in determining the applicable criminal history category." U.S.S.G. § 5H1.8, p.s.  The section then referred to § 4A1.3, p.s., *id.*, which provided in relevant part,

> **Departures Based on Inadequacy of Criminal History Category (Policy Statement)**
>
> (a)    UPWARD DEPARTURES
>
> (1)    STANDARD FOR UPWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's

---

[11] Policy statements are authoritative. *See Williams v. United States*, 503 U.S. 193, 200-02 (1992).

> criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

*Id.*

As a result, just as the Majority points out that the "sentencing judge would consider [Spencer's] prior conviction for felony child abuse anew during resentencing," *supra* at 22, so too could the sentencing judge consider Johnson's guilty plea for the vacated predicate conviction (along with his six other vacated guilty pleas) anew in Johnson's case, if the sentencing judge determined that the pleas constituted "reliable information." Indeed, there are several departures that the sentencing judge could have considered when resentencing Johnson. *See, e.g.*, U.S.S.G. § 5K2.0, p.s. ("Grounds For Departure").

But attempting to divine any sentence imposed on resentencing in both Spencer's and Johnson's cases constitutes pure speculation and certainly provides no objectively ascertainable basis for distinguishing *Johnson* from Spencer's case. The point is simply that in either case, and contrary to the Majority's suggestion, Johnson and Spencer each could have had the same sentence reimposed. Therefore, on this ground, there is no logical basis for the proposition that the Sentencing Guidelines error in *Johnson* constituted a "fundamental defect that resulted in a complete miscarriage of justice," while the error in Spencer's case does not. Therefore, I would hold that Sentencing Guidelines error that was based

102

upon what amounts to effectively an objectively ascertainable legal nullity creates a cognizable claim under § 2255 because such errors constitute a "fundamental defect that result in a complete miscarriage of justice."

**III.    Under the circumstances of this case, Spencer's valid claim of a fundamental defect that results in a complete miscarriage of justice is not barred because he raised it on direct appeal and we incorrectly rejected it.**

Despite the obvious merit to Spencer's claim, some might suggest that Spencer's claim is procedurally barred because he raised the issue on direct appeal and we rejected it at that time. *See Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014). While at least one court has described this procedural bar as the "law-of-the-case doctrine," *see, e.g., White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("Relitigation is forbidden (subject to exceptions built into the law of the case doctrine . . . ) even if it is the first collateral attack."), this Court recently rejected that characterization.[12]  *See Stoufflet*, 757 F.3d at 1239-43.

In explaining why, this Court reasoned that

> Congress and the courts have imposed far greater
> limitations on collateral attacks than the limitations

---

[12] If the procedural bar to relitigation of an issue raised on direct appeal were considered a form of the law-of-the-case doctrine, *see, e.g., Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012) (in citations for the proposition that "a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding," characterizing some out-of-circuit cases as "[i]nvoking the doctrine of the law of the case" or as otherwise relying on the "law of the case" to bar relitigation in a § 2255 proceeding of the previously raised issue), the well-established exception to that doctrine allowing reconsideration of a "prior decision [that] was clearly erroneous and would result in a manifest injustice," *see Stoufflet*, 757 F.3d at 1240, would apply here.

103

> imposed by the law-of-the-case doctrine and its exceptions. . . . For example, new evidence, by itself, is not a ground for relief in a motion to vacate unless that new evidence establishes an error of constitutional proportions or a ***"fundamental defect which inherently results in a complete miscarriage of justice."***

*Id.* at 1240 (citations omitted) (emphasis added). We similarly noted that an intervening change in the law will not warrant relief on collateral review unless that change in the law rendered our earlier ruling "incorrect as a matter of constitutional law or ***a complete miscarriage of justice***." *Id.* at 1242 (emphasis added). And, particularly significant to Spencer's case, we stated, "[A] court of appeals reviewing a motion to vacate will not disturb a prior decision—even if so clearly erroneous that it results in manifest injustice—***if that decision did not result in*** a constitutional error or ***a complete miscarriage of justice***." *Id.* at 1241 (emphasis added).

To determine whether Stoufflet's argument allowed him to escape the procedural bar to raising the same issue in § 2255 proceedings as we rejected on Stoufflet's direct appeal, we then considered whether Stoufflet's claim in his § 2255 petition qualified under the particular "limitation[] on collateral attacks" that Stoufflet proposed was applicable—that a change in the law caused our earlier ruling to be "incorrect as a matter of constitutional law or a complete miscarriage of justice." *See id.* at 1242. We concluded that it did not. *Id.*

104

But the point is that we evaluated whether the procedural bar to raising an issue previously raised on direct appeal applied in Stoufflet's case by the standards of cognizability under § 2255. This makes perfect sense because procedurally barring claims that are cognizable under § 2255 would impermissibly elevate court-made doctrine, developed for the purpose of controlling our docket and promoting finality, above a congressionally enacted statute authorizing habeas review of claims where a complete miscarriage of justice has occurred.

Here, for all of the reasons explained earlier in this dissent, under *Johnson*, a "fundamental defect that results in a complete miscarriage of justice" has happened. In summary, under the Majority's reasoning, the Supreme Court has already determined in *Johnson* that a sentence based on the career-offender enhancement, which, in turn, incorrectly relied on a legal nullity, is "otherwise subject to collateral attack" because it is a fundamental defect that results in a complete miscarriage of justice. Like Johnson's sentence, Spencer's sentence was based on the career-offender enhancement, which was wrongly applied to him because the sentencing court relied on a legal nullity to find the enhancement applicable. So, like Johnson's sentence, Spencer's sentence must also be a fundamental defect that results in a complete miscarriage of justice and therefore "otherwise subject to collateral attack" under § 2255. As a result, under *Stoufflet*,

105

it is not subject to the procedural bar against raising the same claim that was brought on direct appeal in § 2255 proceedings.

## IV.    Conclusion

Finally, the Majority writes, "Our dissenting colleagues . . . fail to . . . provide a principled test for distinguishing between misapplications of the guidelines that can be collaterally challenged and those that cannot." *Supra* at 14 (emphasis in original).  But there is no reason for this dissent to set forth a test for identifying all misapplications of the guidelines that can be collaterally challenged and distinguishing them from those that cannot because existing Supreme Court precedent already renders the misapplication of the guidelines that occurred in Spencer's case to be cognizable.[13]

In *Johnson*, the Supreme Court explicitly recognized that situations besides vacatur could raise a cognizable § 2255 claim when it opined, "[T]here may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own, in which case a prisoner might be able to use a motion under § 2255 to challenge the prior ["]conviction["]

---

[13] I recognize that my proposed resolution of this case may not apply to many—if any—other cases and that it leaves for another day the issue of where to draw the line between a sentence that is cognizable under § 2255 and one that is not.  But we are looking at Spencer's case right now, and the law requires that his sentence be vacated.  So we should not hesitate to vacate his sentence, merely because, as a practical matter, the rule taken from such a resolution may not have wide application.  It is, after all, Spencer's appeal that we are considering.

as well as the federal sentence based on it." 544 U.S. at 304 n.4, 125 S. Ct. at 1578 n.4 (citing *Daniels v. United States*, 532 U.S. 374, 382, 121 S. Ct. 1578, 149 L.Ed.2d 590 (2001)) (citation and internal quotation marks omitted). This is that rare case.

Spencer could not have had his "crime of violence" predicate conviction vacated because he was never convicted of or pled guilty to such a crime in the first place. As in *Johnson*, the "fact" upon which the sentencing court relied to conclude that Spencer was a career offender was effectively a legal nullity, resulting in an erroneous application of the Sentencing Guidelines. Despite Spencer's protestations at sentencing and on direct appeal that he had not been convicted of the violent-felony version of third-degree felony child abuse, the sentencing judge erred in not identifying to which version of the predicate crime Spencer had pled guilty, and we made the same mistake on direct appeal. Now we are saying that Spencer is the one who must pay for our mistakes with what are likely years of his life. That is a "fundamental defect that results in a complete miscarriage of justice." I would grant the petition and remand for resentencing. I therefore respectfully dissent.